NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1051-13T1

FIORELLA ROTONDI, on her own
behalf and on behalf of a
class of similarly situated
persons,

    Plaintiff-Respondent,

v.

DIBRE AUTO GROUP, L.L.C.,
d/b/a NORTH PLAINFIELD
NISSAN,

    Defendant-Appellant,

and

TD AUTO FINANCE, L.L.C.,

    Defendant.

_____

Argued March 24, 2014 — Decided July 9, 2014

Before Judges Ashrafi and Leone.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Docket No.
L-1967-13.

Thomas G. Russomano argued the cause for
appellant (Schiller & Pittenger, P.C.,
attorneys; Mr. Russomano, of counsel; Jay B.
Bohn, on the brief).

Lessie Hill argued the cause for respondent.

PER CURIAM

Defendant Dibre Auto Group, L.L.C., which owns and operates a car dealership named North Plainfield Nissan, appeals from an order of the Law Division denying without prejudice its motion to dismiss plaintiff's class action complaint and to compel arbitration of her individual claims. We affirm.[1]

The facts relevant to the issues on appeal are essentially undisputed. In March 2011, plaintiff Fiorella Rotondi purchased a 2011 Nissan Altima from North Plainfield Nissan. The vehicle was priced at $26,997 according to the Motor Vehicle Retail Order that defendant prepared and plaintiff signed. She was granted a credit of $14,830 on a trade-in of her 2007 Honda Civic, but that entire amount was used by defendant to pay off her existing loan on the Honda Civic. Additional charges were added to the price of the Nissan Altima for: (1) Anti-Theft Vehicle Security Etch (Optional), $199.98; (2) GAP (insurance), $750.00; (3) State sales tax, $918.19; (4) Motor Vehicle Tire Fee, $7.50; (5) Registration/Title Fee, $200.00; and (6) Documentary Fee, $349.97. With these additions, and a credit

_____

[1] Although the order is without prejudice, Rule 2:2-3(a) states that "all orders compelling or denying arbitration, whether the action is dismissed or stayed, shall also be deemed a final judgment of the court for appeal purposes."

for "Net Pay-Off of Trade-In" of $1,250, the total contract price was $28,172.64.[2]

Defendant arranged for financing by plaintiff to pay for the new car. Our record does not contain a legible copy of the financing contract plaintiff signed with Chase as the lender, but counsel represent that the amount financed was $25,865.17 for a period of seventy-two months (six years), with an interest rate of 12.14% and monthly payments of $535.90. Defendant's salesperson told plaintiff she could return to the dealership within one year to refinance the loan with better terms.

A year later, in March 2012, plaintiff returned to refinance her car loan. Although plaintiff kept the same 2011 Nissan Altima, defendant dealership presented to her and she signed another Motor Vehicle Retail Order in the same preprinted form as the March 2011 order. The price listed for the 2011 Nissan Altima that plaintiff already owned was $25,311.32, and a trade-in was shown on the document of a 2010 Nissan Altima with a trade-in value of $24,764.26 and the identical amount as the Chase loan balance to be paid off with the trade-in value. No

---

[2] The document does not explain why the trade-in value of the 2007 Honda Civic was determined to be the same amount as the balance of plaintiff's existing car loan and yet she was granted a credit for a "net pay-off of the trade-in."

vehicle identification number was provided for the 2010 Altima being traded in; no such car was involved in the transaction.

As with the 2011 Retail Order, the 2012 order also added charges for: (1) Anti-Theft Vehicle Security Etch (Optional), $199.98; (2) State sales tax, $196.49; (3) Registration/Title Fee, $150.00; and (4) Documentary Fee, $349.97. There was no GAP insurance or tire fee listed, but there was a new additional charge added of $2,060.00 for a service contract. There was nothing entered as a "Net Pay-Off of Trade-In." The total contract price was $28,267.76.

The re-financed loan was assigned to defendant TD Auto Finance, LLC. The amount financed was $26,767.76 for a new term of seventy-two months, with an interest rate of 8.69%, and monthly payments of $480.00. So, while the interest rate and monthly payments were reduced, plaintiff was required to make an additional year of monthly payments for the same car, and she was charged again for a number of items added to the base price of the car.

The 2011 and 2012 Retail Orders had identical mandatory arbitration agreements that plaintiff signed. In relevant part those sections of the Orders stated:

> **AGREEMENT TO ARBITRATE ANY CLAIMS. READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY, IT LIMITS YOUR RIGHTS, INCLUDING THE RIGHT TO MAINTAIN A COURT ACTION.**

A-1051-13T1

The parties to this agreement agree to arbitrate any claim, dispute, or controversy, including all statutory claims and any state or federal claims, that may arise out of or relating to the sale or lease identified in this agreement.  By agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes, such as court action or administrative proceeding, to settle their disputes.  Consumer Fraud, Used Car Lemon Law, and Truth-in-Lending claims are just three examples of the various types of claims subject to arbitration under this agreement.  The parties also agree to (i) waive any right to pursue any claims arising under this agreement, including statutory, state or federal claims, as a class action arbitration, or (ii) to have an arbitration under this agreement consolidated with any other arbitration or proceeding. . . . If any part of this arbitration clause, other than waivers of class action rights, is found to be unenforceable for any reason, the remaining provisions shall remain enforceable.  If a waiver of class action and consolidation rights is found unenforceable in any action in which class action remedies have been sought, this entire arbitration clause shall be deemed unenforceable, it being the intention and agreement of the parties not to arbitrate class actions or in consolidated proceedings. . . . **THIS ARBITRATION PROVISION LIMITS YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION.  PLEASE READ IT CAREFULLY PRIOR TO SIGNING.**

[(underscoring added).]

In May 2013, plaintiff filed a five-count class action complaint and jury demand.  She then amended the pleading twice.  Her second amended complaint alleged in seven counts: (1)

violation of the Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-2 to -106, (2) unjust enrichment, (3) theft by deception, (4) civil conspiracy, (5) common law fraud, (6) violation of the Plain Language Act, <u>N.J.S.A.</u> 56:12-1 to -13, and (7) violation of the Truth in Lending Act.  The complaint described the class on behalf of which plaintiff filed suit as all those person "who purchased and/or refinanced a new or used vehicle" from March 29, 2011, to the time of the pleading, adding the following list of specific attributes of the class members:

1. who purchased or refinanced the vehicle from defendant, North Plainfield Nissan. Who traded in any vehicle during the purchase and/or refinance.

2. who did not receive a dollar value for the traded in vehicle.

3. who did not trade in any vehicle during the refinance however the contract referenced a trade in description and allowance.

4. who were charged a fee for anti-theft vehicle security etching twice, once on the purchase and again on the refinance.

5. who were charged documentary fees.

6. who were charged sales tax on the refinanced vehicle when there wasn't a sale.

7. who were charged a sales tax less than the amount required by the State of New Jersey.

8. who were charged a registration/title fee on the refinance when these documents were not provided.

9. who were charged a documentary fee including document delivery service on the

refinance when no documents were delivered.

10. who were charged a finance fee.

11. where the contract was assigned to TD Auto Finance, LLC.

Defendant moved to dismiss the second amended complaint and instead to compel arbitration of any individual claims of plaintiff. The Law Division heard argument of counsel and denied the motion without prejudice. The court reasoned that the provision of the arbitration agreement quoted above that refers to plaintiff's agreement to "waive any . . . claims . . . as a class action arbitration" was unclear and ambiguous as to whether plaintiff's recourse was to pursue a class action in the courts. The court also stated that factual issues existed regarding whether the arbitration clause and waiver of class actions was an unconscionable term of the two Retail Orders, and that discovery would be permitted to develop that issue. The court stated that defendant could renew its motion to compel arbitration as further evidence developed through discovery.

Defendant appeals, contending that the Federal Arbitration Act ("FAA"), 9 U.S.C.A. §§ 1 to 16, United States Supreme Court case law applying the FAA, and N.J.S.A. 2A:24-1 all mandate that the court enforce the arbitration agreements contained in the

two contracts executed by the parties.[3]  Defendant cites a number

of federal and state cases holding that arbitration is a favored

method of dispute resolution and arbitration agreements should

be enforced in accordance with the terms of the parties'

contract.  See, e.g., Volt Info. Sciences, Inc. v. Bd. of Trs.

of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S. Ct.

1248, 1255, 103 L. Ed. 2d 488, 500 (1989); Garfinkel v.

Morristown Obstetrics & Gynecology Assocs. P.A., 168 N.J. 124,

131-32 (2001); Malik v. Ruttenberg, 398 N.J. Super. 489, 494-95

(App. Div. 2008).

The FAA provides that the arbitration provision of a

contract affecting commerce "shall be valid, irrevocable, and

---

[3] Defendant does not elaborate on its contention regarding
N.J.S.A. 2A:24-1, and relies instead on its analysis of the
federal law as applied by the United States Supreme Court.  The
New Jersey statute states:

> A provision in a written contract to
> settle by arbitration a controversy that may
> arise therefrom or a refusal to perform the
> whole or a part thereof or a written
> agreement to submit, pursuant to section
> 2A:24-2 of this title, any existing
> controversy to arbitration, whether the
> controversy arise out of contract or
> otherwise, shall be valid, enforceable and
> irrevocable, except upon such grounds as
> exist at law or in equity for the revocation
> of a contract.
>
> [Ibid.]

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.A. § 2. Defendant acknowledges that general contract defenses, such as fraud, duress, and unconscionability, are available under the FAA to invalidate arbitration agreements.  See Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902, 909 (1996); Gras v. Assocs. First Capital Corp., 346 N.J. Super. 42, 47 (App. Div. 2001), certif. denied, 171 N.J. 445 (2002).  To those defenses, we have added the requirement that a waiver of rights to pursue judicial remedies must be stated in clear language, unambiguously.  Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577, 586-87 (App. Div.), certif. denied, 181 N.J. 545 (2004).

In Muhammad v. County Bank of Rehoboth Beach, 189 N.J. 1, 22 (2006), cert. denied, 549 U.S. 1338, 127 S. Ct. 2032, 167 L. Ed. 2d 763 (2007), our State Supreme Court held void as unconscionable and against the public policy of this State arbitration clauses in adhesion contracts that barred class actions, where small individual claims could not be practically pursued.  In reaching that holding, the Court cited with approval a similar decision of the California Supreme Court in Discover Bank v. Superior Court, 113 P.3d 1100, 1110 (Cal. 2005).  Muhammad, supra, 189 N.J. at 20.

A-1051-13T1

Subsequently, the United States Supreme Court overruled Discover Bank, and effectively overruled Muhammad, in AT&T Mobility LLC v. Concepcion, 563 U.S. ___, ___, 131 S. Ct. 1740, 1750, 179 L. Ed. 2d 742, 755 (2011). The Court held that the FAA preempts a determination under state law that a waiver of class actions in an arbitration clause is unenforceable on grounds of state public policy or per se unconscionability. See id. at ___, 131 S. Ct. at 1753, 179 L. Ed. 2d at 758-59.

Consequently, defendant correctly argues in this appeal that the class action waiver provisions of the Retail Orders are not subject to a defense of per se unconscionability on public policy grounds.

Furthermore, we held in Rockel, supra, 368 N.J. Super. at 580, that a claim of unconscionability based on alleged violation of the Consumer Fraud Act does not in itself void an arbitration clause. Rather, unconscionability as a contract defense has to be determined on a case-by-case basis. Ibid. When unconscionability is based on alleged Consumer Fraud violations, the issue can be decided in the arbitration hearing. Gras, supra, 346 N.J. Super. at 52-53.

Most recently in NAACP of Camden County East v. Foulke Management Corp., 421 N.J. Super. 404 (App. Div. 2011), appeal dism'd, 213 N.J. 47 (2013), we held that a class action waiver

10                                                    A-1051-13T1

in a transaction to purchase a new car was not per se invalid, id. at 441, but that the arbitration provisions of the several contract documents in that case were inconsistent and therefore not enforceable. Id. at 444-45.

Similarly in this case, we agree with the trial judge that the reference in the arbitration clauses to "class action arbitration" is potentially confusing. On the one hand, the arbitration clauses state that the parties to the contract agree to arbitrate all claims. On the other hand, "class action arbitration" is waived. Since the agreement seems to preserve other types of claims, only subject to arbitration, and since it does not state explicitly that the consumer may not pursue any class action whatsoever, one might infer that a class action must be brought in the courts.

In Foulke Management, supra, 421 N.J. Super. at 425, we emphasized the need for clarity in an arbitration clause. See also Garfinkel, supra, 168 N.J. at 132 ("[A] party's waiver of statutory rights 'must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.'" (quoting Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 78 N.J. 122, 140 (1978)); Moore v. Woman to Woman Obstetrics & Gynecology, L.L.C., 416 N.J. Super. 30, 37 (App. Div. 2010) ("Courts decline to enforce

an arbitration agreement that is not sufficiently clear as to the rights the party is waiving.").  We conclude that a prohibition against class actions is not enforceable in either of the two contracts plaintiff signed because it is not stated with clarity.

In addition, plaintiff argues that the arbitration clause in the 2012 Retail Order is not enforceable because there was no sale or lease of a vehicle at that time.  Rather, the transaction was a refinancing of the car she bought a year earlier and already owned.  While the refinancing was real and desired by plaintiff, the terms of a new sale with additional charges was not.  Plaintiff contends there was no "meeting of the minds" in entering into the March 2012 written agreement.

We view this argument as alleging that the 2012 contract was fraudulent in the making.  See, e.g., Amsterdam v. De Paul, 70 N.J. Super. 196, 200 (App. Div. 1961); N.J. Mortg. & Inv. Co. v. Dorsey, 60 N.J. Super. 299, 302 (App. Div.), aff'd o.b., 33 N.J. 448 (1960); see also McDonald v. Central R.R. Co., 89 N.J.L. 251, 254 (E. & A. 1916) ("A misrepresentation of the contents of a document by which one is induced to sign a paper thinking it is other than it really is, is the typical case of fraud in the execution; it is a case where the defrauded party may properly say, 'I never agreed to that . . . .'").

Alternatively, we view plaintiff as contending that the contract was voidable because of a mistake of fact — that is, she believed she was signing a refinancing agreement but the document was for a non-existent sale. See Restatement (Second) of Contracts §§ 151-155 (1981) (common law principles applicable to mistake in the formation of a contract).

Defendant's general manager has certified that it is common for car dealers to prepare a new sales order when they arrange for a refinancing through their lender sources, especially a new lender. He claims that the transaction is, in effect, a sale of the vehicle by the buyer back to the dealer and then a resale of the same vehicle to the buyer. However, this explanation does not address why the 2012 Retail Order prepared by defendant designates a non-existent 2010 Nissan Altima as the vehicle that plaintiff was trading in. There is no document evidencing a sale of the 2011 Nissan Altima from plaintiff back to defendant. Defendant's explanation also does not address why the trade-in value of plaintiff's car is listed as $24,764.26, which is the amount of her outstanding loan balance to Chase, while the sale price for the same car being purportedly resold to plaintiff on the same day is designated as $25,311.22. There is no indication in the record that plaintiff was ever informed that defendant would charge a net $546.96 to refinance her original

loan, and plaintiff alleges that such a charge is unlawful and fraudulent.

Plaintiff also alleges fraud in the 2012 transaction for other reasons, including the re-charging for anti-theft security etching and vehicle documentation and related fees, a new charge for a service contract that she claims she did not request, and allegedly no true savings on her original loan. She contends that, since she requested only a refinancing of her loan and not another purchase of a vehicle, there was no meeting of the minds on the 2012 contract, and therefore, the arbitration clause is part of a void contract and not enforceable.

In Foulke Management, supra, 421 N.J. Super. at 425, we stated that "an agreement to arbitrate must be the product of mutual assent, as determined under customary principles of contract law. . . . There must be, as our cases instruct, a 'meeting of the minds.'" We held that: "because arbitration provisions are often embedded in contracts of adhesion, courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." Ibid.

Here, the trial court permitted discovery to develop the parties' competing contentions regarding the enforceability of the arbitration provisions. Our conclusion that the "class

action arbitration" waivers were not stated with sufficient clarity to constitute a complete abandonment of court proceedings to pursue a class action makes it unnecessary for us to address further plaintiff's argument that the 2012 Retail Order was a fraud and a sham and should not be enforced for that alternative reason.

Since plaintiff did not file a cross-appeal, we have no occasion to address whether the trial court's denial of defendant's motion to compel arbitration should have been with or without prejudice. The parties and the trial court are free to address that issue in further proceedings consistent with this decision.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1051-13T1