847 A.2d 621 (2004)
368 N.J. Super. 577
Heather L. ROCKEL, Leonard E. Krwawecz, Aaron Stuart and William J. Hoelzel, Plaintiffs-Appellants,
v.
CHERRY HILL DODGE, Defendant-Respondent, and
Dave Smith, Joel Beswick and Mike Salte, Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted April 20, 2004.
Decided May 13, 2004.
*622 Riley & Sandilos, attorneys for appellants (Charles N. Riley, of counsel and on the brief).
Kenney & Kearney, attorneys for respondent (Laura D. Ruccolo, Cherry Hill, of counsel; David W. Haworth, on the brief).
Before Judges SKILLMAN, COBURN and C.S. FISHER.
The opinion of the court was delivered by FISHER, J.A.D.
Plaintiffs commenced this action, claiming that the unconscionable sales practices of defendant Cherry Hill Dodge, in violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -106, induced them to purchase or lease motor vehicles. Defendant moved for dismissal, contending that plaintiffs agreed to arbitrate these disputes. *623 The trial judge granted that motion and plaintiffs have appealed. We reverse.
We initially observe that plaintiffs argue for the first time on appeal that the arbitration provisions in question violate the Truth-in-Consumer Contract, Warranty and Notice Act (the Truth Act), N.J.S.A. 56:12-14 to -18. The Truth Act prohibits, among other things, a seller from entering into a contract with a consumer "which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller... as established by State or Federal law at the time ... the consumer contract is signed...." N.J.S.A. 56:12-15. Plaintiffs question whether arbitration provisions which, when enforced, extinguish the right to trial by juryviolate the intent of N.J.S.A. 56:12-15 when applied to a CFA claim. We decline to consider this contention due to plaintiffs' failure to raise it in the trial court. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). Nevertheless, we conclude that defendant may not compel arbitration of plaintiffs' claims for other reasons to which we now turn.
A consumer's claim that a contract was the product of unconscionable practices in violation of the CFA does not necessarily prohibit the enforcement of an arbitration clause contained in the contract under attack. In Gras v. Associates First Capital Corp., 346 N.J.Super. 42, 52, 786 A.2d 886 (App.Div.2001), certif. denied, 171 N.J. 445, 794 A.2d 184 (2002), we declared there is "no inherent conflict between arbitration and the underlying purposes of the CFA." As explained:
[T]wo significant public policies must be harmonized. Plaintiffs identify the first and correctly assert that the policy behind the CFA is to "root out consumer fraud." However, that policy must be balanced by a competing and compelling public policy favoring arbitration as a means of dispute resolution and requiring liberal construction of contracts in favor of arbitration.
[Id. at 53-54, 786 A.2d 886 (citations omitted).]
These policies are in or near equipoise. Id. at 54, 786 A.2d 886. Finding that the tension between these policies precludes a brightline rule, Gras requires that arbitration provisions be examined on a case-by-case basis. Such provisions may be enforced if they contain the appropriate attributes or disregarded if they do not.
Unlike Gras, which found the terms of an arbitration provision sufficiently clear to permit enforcement, we conclude that the uncertain content of the parties' agreement to arbitrate, the contracts' conflicting descriptions of the manner and procedure which would govern the arbitration proceedings, the absence of a definitive waiver of plaintiffs' statutory claims, and the obscure appearance and location of the arbitration provisions, militate against the entry of an order requiring arbitration over plaintiffs' objection. Accordingly, unlike Gras, the arbitration provisions at hand significantly skew the balance between the purposes of the CFA and the policy in favor of the arbitration of disputes, thus requiring a rejection of defendant's attempts to compel arbitration.
In Gras, we held that an arbitration provision was "specific enough to inform plaintiffs that they were waiving their statutory rights to litigation in a court," id. at 57, 786 A.2d 886, and concluded that the policy in favor of the arbitration of disputes sufficiently outweighed the plaintiffs' statutory right to present their claims to a jury in a court of law. Here, the arbitration agreement is highly ambiguous because the parties executed two documents *624 which contain separate and somewhat disparate arbitration clauses. This ambiguity, we conclude, is fatal to the compelling of the arbitration of plaintiffs' CFA claims. See Leodori v. CIGNA Corp., 175 N.J. 293, 302, 814 A.2d 1098 (2003) ("[A] waiver-of-rights provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim."); Martindale v. Sandvik, Inc., 173 N.J. 76, 96, 800 A.2d 872 (2002) (arbitration agreement enforced because, among other things, it "was clear and unambiguous."); Garfinkel v. Morristown Obstetrics & Gynecology Ass'n, 168 N.J. 124, 135, 773 A.2d 665 (2001) ("The Court will not assume that employees intend to waive [statutory] rights unless their agreements so provide in unambiguous terms.").
The ambiguity of the arbitration agreement is demonstrated by the presence of two unrelated arbitration clauses contained in the contract documents, as well as their somewhat conflicting terms. The first of these documents, entitled "Motor Vehicle Retail Order Agreement" (retail order agreement), contains, in a shaded box near the line upon which the purchaser was expected to sign, the following:
ARBITRATION: The terms of this Agreement are hereby incorporated herein and made a part of this Agreement. Dealer and you, the purchaser, agree that any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA").
On the front side of the second document, entitled "Retail Installment Contract" (retail installment contract), is stated the following, in type no larger than many of the other unrelated provisions: "Cautionit is important that you thoroughly read the contract before you sign it, including important arbitration disclosures and privacy policy on the back of this contract." On the reverse side, among numerous other unrelated provisions, was an arbitration provision preceded by the following:

IMPORTANT ARBITRATION DISCLOSURES
The following Arbitration provisions significantly affect Your rights in any dispute with us. Please read this carefully before You sign the contract.
Then, in smaller type, the document sets forth five statements regarding arbitration not contained in the retail order agreement, including (1) the agreement to resolve, upon the election of either party, "any dispute between us [in] arbitration and not in court," (2) the waiver of the right to a trial by jury or a trial in court if arbitration is elected, (3) the surrender of any right to "bring a class-action lawsuit or class arbitration," or the right to consolidate an arbitration based on this agreement with any other arbitrations, (4) an acknowledgement that discovery in arbitration "is generally more limited than in a lawsuit," and (5) the warning that "[o]ther rights that each of us would have in court may not be available in arbitration."
The retail installment contract next describes the scope of arbitration in a similar but more expansive manner than that contained in the retail order agreement:
Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this contract, the arbitration clause or the arbitrability of any issue), between us ... which arise out of or relate to this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at the election of either of us (or the election *625 of any such third party), be resolved by a neutral, binding arbitration and not by a court action. Whoever first demands arbitration may choose to proceed under the applicable rules of the American Arbitration Association, or its successor....
The scope of this arbitration clause is far more expansive than the clause contained in the retail order agreement since it purports to render arbitrable the scope and meaning of the arbitration agreement, attempts to extend the arbitration agreement to persons not parties to the agreement, and declares that the right to elect arbitration may be exercised even by non-parties.
While we held in Gras that arbitration provisions in consumer contracts may be enforced, we also emphasizedas has the Supreme Court in considering the employment agreements questioned in Leodori, Martindale and Garfinkelthe importance that the arbitration agreement be expressed in unambiguous terms. 346 N.J.Super. at 56, 786 A.2d 886. Accordingly, we conclude that defendant's inclusion of two conflicting arbitration provisions in the contract documents confounds any clear understanding of the parties' undertaking and tilts the balance, between the policies underlying arbitration and the CFA, in plaintiffs' favor.[1]
Examining the provisions separately, and ignoring the fact that they are contained within the same integrated contract, leads to the same conclusion. We are, again, guided by our Supreme Court's recent decisions regarding arbitration provisions in employment contracts.
In Garfinkel, the Court held that a contractual clause which stated only that "`any controversy or claim' that arises from the agreement or its breach shall be settled by arbitration"similar to the arbitration provisions in question herewas ineffectual to require arbitration since it failed to "mention, either expressly or by general reference, statutory claims redressable by the LAD[2]." 168 N.J. at 134, 773 A.2d 665. The Court expanded upon this by stating:
The Court will not assume that employees intend to waive those rights unless their agreements so provide in unambiguous terms. That said, we do not suggest that a party need refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights. To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination. It should also reflect the employee's general understanding of the type of claims included in the waiver, e.g., workplace discrimination claims.

*626 [Id. at 135, 773 A.2d 665 (emphasis added).]
Not long after Garfinkel, the Court enforced an arbitration agreement where, as part of her employment application, an employee was required to sign an agreement which stated:
AS A CONDITION OF MY EMPLOYMENT, I AGREE TO WAIVE MY RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING RELATED TO MY EMPLOYMENT WITH SANDVIK.
I UNDERSTAND THAT I AM WAIVING MY RIGHT TO A JURY TRIAL VOLUNTARILY AND KNOWINGLY, AND FREE FROM DURESS OR COERCION.
....
I AGREE THAT ALL DISPUTES RELATING TO MY EMPLOYMENT WITH SANDVIK OR TERMINATION THEREOF SHALL BE DECIDED BY AN ARBITRATOR THROUGH THE LABOR RELATIONS SECTION OF THE AMERICAN ARBITRATION ASSOCIATION.
[Martindale, supra, 173 N.J. at 81-82, 800 A.2d 872.]
When the employee later filed an action claiming violations of the LAD and the New Jersey Family Leave Act, N.J.S.A. 34:11B-1 to -16, the Court's examination of the arbitration agreement led to the conclusion that the agreement's language was "sufficiently broad to encompass reasonably plaintiff's statutory causes of action." Id. at 96, 800 A.2d 872. In explaining the differences between Martindale's agreement and the agreement found wanting in Garfinkel, the Court held:
Unlike the arbitration provision[ ] contained in Garfinkel ..., the arbitration provision here does not contain any limiting references. Its wording provided plaintiff with sufficient notice at the time she signed the agreement that all claims relating to employment with and termination from Sandvik would be resolved through arbitration. It also addressed specifically a waiver of the right to a jury trial, augmenting the notice to all parties to the agreement that claims involving jury trials would be resolved instead through arbitration.
[Id. at 96, 800 A.2d 872.]
While the Martindale agreement did not contain any specific delineation of statutory claims, the Court concluded that "the wording chosen ... satisfied the spirit of [Garfinkel]." Ibid.
We are satisfied from our review of the contract documents that the arbitration provisions in question do not conform to the requirements of Garfinkel, Martindale and Gras.
In Garfinkel, the Court found wanting a provision which stated that "any controversy or claim arising out of, or relating to, this Agreement or breach thereof," shall be "settled by arbitration." 168 N.J. at 128, 773 A.2d 665. The provision contained in the retail order agreement is indistinguishable from the provision in Garfinkel. Its relevant terms state only the declaration, like Garfinkel, that "any controversy or claim arising out of or relating to this Agreement" shall be "settled by arbitration." Standing alone, this provision represents an insufficient foundation for an order compelling arbitration.
We recognize that the arbitration clause contained in the retail installment contract bears some similarities to the agreement found acceptable in Martindale. For example, the former contains a "waiver of the right to a trial by jury or a trial in court" in "any dispute between us [in] arbitration and not in court," and the latter expressed the employee's agreement "to waive my right to a jury trial" in "all *627 disputes relating to my employment." Martindale concluded that such language was not only "clear and unambiguous," but also "sufficiently broad to encompass reasonably plaintiff's statutory causes of action." 173 N.J. at 96, 800 A.2d 872. Notwithstanding these similarities, the location and appearance of the arbitration provision in the retail installment contract warrant our conclusion that arbitration cannot be compelled in these circumstances.
The size of the print and the location of the arbitration provision in a contract has great relevance to any determination to compel arbitration, particularly when, like here, the provision is contained in a contract of adhesion. Unlike Martindale, the language purporting to constitute plaintiffs' waiver of a trial by jury in the retail installment contract is set forth in small print on the back of a document which only cautions, in slightly larger print on the front, that "important arbitration disclosures" appear on the reverse side. In contrast, we found adequate in Gras an arbitration agreement where the contract stated "at the top of the page in uppercase letters," the warning to the consumer to read the agreement carefully because "IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION." 346 N.J.Super. at 57, 786 A.2d 886. Here, the arbitration provisions in the retail installment contract are difficult to locate and, once found, onerous to read in light of the small size of the print. There is also no language on the first page of the document, in print distinguishable by its greater size or different color from the rest of the words on the page, which warns that the right to pursue a lawsuit in court or the waiver of statutory claims or the right to trial by jury will be affected or eliminated by provisions contained elsewhere in the document.
In Gras we also emphasized that the arbitration provision expressly stated that, by signing, the consumer was agreeing to arbitrate "any claim or dispute based on a federal or state statute." Id. at 47, 786 A.2d 886. The contract documents in question do not contain any similar language. The only statement which defendant has alluded to in attempting to meet this requirementthe amorphous statement that "[o]ther rights that each of us would have in court may not be available in arbitration"falls woefully short of what Gras requires.
Accordingly, we conclude that the distinctions between the provisions in question and those considered in Garfinkel, Martindale and Gras are critical to the arbitrability of plaintiffs' CFA claims. The delicate balance between the policies of the CFA and the policy in favor of arbitration requires that the consumer be given reasonable notice of such provisions, that the provisions contain a clear waiver of statutory rights, and that the arbitration agreement be phrased in unambiguous terms. As explained, the arbitration agreement in question fails to meet these critical requirements. While we continue to adhere to Gras's holdings that arbitration may be compelled in a consumer transaction even when imposed by a party possessing superior bargaining power, and that a party claiming a contract to be the product of unconscionable conduct prohibited by the CFA may be compelled to arbitrate because of the presence of an arbitration clause contained in the very contract under attack, we conclude that any attempt to impose arbitration through an arbitration agreement less clear and less noticeable than that considered in Gras is not likely to pass muster. Here, the presence of two conflicting arbitration *628 provisions, the expression of a waiver of the right to trial by jury in small print, and the absence of any other clear warning or caution of the waiver of statutory rights, requires a rejection of defendant's attempt to compel arbitration of these claims.
Reversed.
NOTES
[1] Unlike the other plaintiffs, Hoelzel did not purchase a vehicle but instead entered into a five-year lease of a 2002 Dodge Durango. To effectuate this transaction, Hoelzel was obligated to sign a retail order agreement (which contains an arbitration provision identical to those contained in the other plaintiffs' retail order agreements) and a lease agreement. The lease agreement contains an arbitration provision which is different from the arbitration provision contained in the retail order agreement. While the lease's arbitration provision is also different from the arbitration provision contained in the retail installment contracts described above, we need not further analyze its terms because it is stated in terms even less acceptable, and is even harder to notice or locate in the document, than the arbitration provision contained in the retail installment contracts signed by the other plaintiffs.
[2] The Law Against Discrimination. N.J.S.A. 10:5-1 to -49.