GORSUCH, Circuit Judge,
dissenting.
My colleagues are of course correct that “arbitration clauses are only valid if the parties intended to arbitrate.” Op. at 1137. But, respectfully, I just don’t see any doubt that the parties before us did intend to arbitrate. All six—yes six—of the parties’ interrelated commercial agreements contain arbitration clauses. The plaintiff himself, the party the court today permits to avoid arbitration, instructed his own counsel to draft three of these agreements. In my view, parties to a commercial deal could have hardly demonstrated with greater clarity an intention to arbitrate their disputes and I see no way we might lawfully rescue them from their choice.
To be sure and as my colleagues note, the six agreements before us differ on the details concerning hoiv arbitration should proceed. This disagreement, my colleagues suggest, is fatal because to form a contract the parties must agree on “essential terms.” Op. at 1137,1138-39. But, respectfully, I believe treating the procedural details surrounding arbitration in this case as «^essential terms would do a good deal more-to “effectuate[ ] the intent of the parties” before us, itself always the goal of contract interpretation. Lane v. Urgitus, 145 P.3d 672, 677 (Colo. 2006). Indeed, I see two easy workarounds that I believe would be more consistent with the parties’ expressed purposes than the course my colleagues chart. First, 'it seems pretty clear the plaintiff in this case would be free to initiate arbitration under the terms of whichever of the six agreements he prefers—after all, even the defendants have expressly acknowledged that his claims fall within the scope of every single agreement. So it is the plaintiff need only choose which procedures he likes best. Second, Colorado’s preference for arbitration has led it to enforce even arbitration clauses that say no more than that disputes “shall be submitted to binding arbitration” without' any discussion of procedural details. Guthrie v. Barda, 188 Colo. 124, 533 P.2d 487, 487 (1975). In circumstances' like these, Colorado statutory law provides a method for appointing an arbitrator when the agreement fails to do so, Colo. Rev. Stat. § 13-22-211(1), and a means for the arbitrator to determine any outstanding procedural issues, id. § 13-22-215 (process); id. § 13-22-217 (discovery); id, § 13-22-221 (attorneys’ fees). The Federal Arbitration Act contains similar provisions. See 9 U.S.C. § 5; Green v. U.S. Cash Advance Ill., LLC, 724 F.3d 787, 792-93 (7th Cir. 2013) (collecting cases us *1140 ing § 5 “to complete detail-free arbitration clauses”). We could simply follow that well trodden path here too. Indeed, either of these routes would, it seems to me, effectuate the intent of the parties much better than eradicating all six arbitration agreements root and branch and allowing the plaintiff to escape the consequences of a choice he once so clearly preferred but now simply regrets.
Consider an analogy outside arbitration. In the “battle of the forms”, purchasers and vendors agree to transact but each side memorializes the deal on its own standard forms. See, e.g., Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1574 (10th Cir. 1984). This court has interpreted the Uniform Commercial Code to mean that conflicting terms in these forms knock each other out but do not void the contract. Id. at 1579. That is because a meeting of the minds occurs with respect to the fundamentals of the deal even if not with respect to the details. Id. at 1580 (explaining that the “fundamental purpose of the U.C.C.... is to preserve a contract and fill in any gaps if the parties intended to make a contract and there is a reasonable basis for giving an appropriate remedy”). Respectfully, I would follow the same course here. Indeed, there may be an argument that both Colorado law and the FAA require it. Colorado law given its strong support for arbitration. See, e.g., Lane, 145 P.3d at 678 (“Our constitution, our statutes, and our case law all support agreements to, arbitrate disputes.”). And the FAA given its non-discrimination principle that requires us to treat arbitration clauses with no less solicitude than we afford to other contractual provisions, like those that apply in the battle of the forms context. See 9 U.S.C. § 2; AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S.Ct 1740, 179 L.Ed.2d 742 (2011).
In reaching the opposite judgment, my colleagues place great weight on New Jersey cases that have voided arbitration agreements for inconsistency. But, respectfully, I do not see the relevance of these authorities even taken on their own terms. For example, in NAACP the court held that, as a matter of New Jersey law, consumer contracts must “convey—with precision and consistency—what the exact terms and conditions of th[e] arbitration process.[are].” NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J.Super. 404, 24 A.3d 777, 794 (N.J. Super. Ct. App. Div. 2011). But the reasons for that rule And no purchase here. New Jersey courts say they demand “extra clarity” in arbitration agreements to protect consumers against unknowingly waiving their right to sue under the State’s Consumer Fraud Act. See id. at 797; Rockel v. Cherry Hill Dodge, 368 NJ.Super. 577, 847 A.2d 621, 623 (N.J. Super. Ct. App. Div. 2004). And they say they take “particular care” in scrutinizing mutual assent in the consumer arena “because arbitration provisions are often embedded in contracts of adhesion.” NAACP, 24 A.3d at 790-91; see also Rockel, 847 A.2d at 627. But this case, by contrast, involves parties to a commercial, not a consumer, transaction, with contracts actively negotiated by both sides, not contracts of adhesion thrust upon the plaintiff. Indeed, three of the six agreements before us contain handwritten modifications and, again, three the plaintiff himself proposed (through his own attorney no less). Respectfully, it seems to me that applying New Jersey’s extra clarity i-equirement to this case divorces a rule from its reasons. Because the plaintiff here resembles a merchant much more than a consumer, the battle.of the forms offers the better analogy-
Beyond even that and however instructive NAACP might be about New Jersey law, I am also quite unsure whether it has anything to say about Colorado law or whether it would survive a brush with the *1141 FAA. Colorado has not adopted the same extra clarity requirement for consumer contracts that New Jersey has. And until it does so I respectfully suggest we should prefer rules harmonious with the State’s established policy in favor of arbitration and against erecting barriers to arbitration—especially where, as here, both parties have so clearly and repeatedly demonstrated their desire to arbitrate. Then too there is the federal policy favoring arbitration embodied in the FAA and armed with preemptive force. The Supreme Court has held that the FAA preempts state laws that single out arbitration clauses for disfavored treatment. See, e.g., Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). And our sister circuits have held that states may not disfavor arbitration through special rules about what’s required to show contract formation. See, e.g., Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 46 (2d Cir. 1993) (finding preempted New York’s “discriminatory” requirement that arbitration agreements, but not other agreements, be “express” and “unequivocal”). Whether or not the FAA would preempt New Jersey’s special “extra clarity” rule for certain kinds of arbitration agreements, that possibility undoubtedly exists and seems to me to counsel against endorsing it without a good deal more careful investigation than the parties offer us in this case.
All this is not to say that I believe conflicting contract provisions might never render an arbitration agreement void for lack of a meeting of the minds. In some cases, for example, the parties’ contract documents will conflict on the fundamental question whether they wish to arbitrate or not. See, e.g., Bellman v. i3Carbon, LLC, 563 Fed.Appx. 608, 614 (10th Cir. 2014). But that is not our case and ours admits a straightforward resolution. Because the plaintiff asked for and received assent to three arbitration clauses he drafted and signed three others, all in a commercial setting and while represented by counsel, I just don’t see how he can now seriously claim that he never intended to arbitrate— or how we might rightly rescue him from the consequences of his choice. I respectfully dissent.