**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3325-16T1

SAND CASTLE DEVELOPMENT, LLC,

      Plaintiff-Appellant,

v.

AVALON DEVELOPMENT GROUP, LLC,
CHRISTOPHER SMITH, SIGNATURE
BUILDING SYSTEMS OF PA, LLC,
and JUSTIN DEPHILLIPS,

      Defendants-Respondents.

_____

      Argued September 18, 2017 — Decided October 26, 2017

      Before Judges Messano and Accurso.

      On appeal from Superior Court of New Jersey,
      Law Division, Cape May County, Docket No. L-
      0176-16.

      Michael E. Holzapfel argued the cause for
      appellant (Becker, LLC, attorneys; Mr.
      Holzapfel, on the briefs).

      Katrina M. Register argued the cause for
      respondents Signature Building Systems of PA,
      LLC and Justin DePhillips (Trimble & Armano,
      attorneys; John W. Trimble, Jr. and Ms.
      Register, on the brief).

PER CURIAM

Plaintiff Sand Castle Development, LLC, entered into a construction agreement (the Contract) with defendant Avalon Development Group, LLC, to demolish an existing motel and construct twenty-four condominium units utilizing modular construction. Avalon, in turn, entered into a "Master Purchase Agreement" (MPA) with defendant Signature Building Systems of PA, LLC, whereby Signature agreed to manufacture and deliver the modular units. Avalon's representative, defendant Christopher Smith, and Signature's Director of Sales and Marketing, defendant Justin DePhillips, executed the MPA and a separate purchase order for the units. Apparently, to assure favorable tax-exempt status for the project, the MPA and purchase order were modified to include plaintiff. Its principal executed copies of both and forwarded them to Signature with a deposit of $300,000.[1]

After the motel was demolished, disputes broke out between the parties, leading ultimately to the filing of plaintiff's complaint naming Avalon, Smith, Signature and DePhillips as defendants and asserting breach of contract, fraud and other causes of action.

---

[1] The second MPA was identical to the original, except it added plaintiff as the "owner."

A-3325-16T1

The Contract between plaintiff and Avalon contained no arbitration provision. However, the MPA contained two provisions that are the crux of the present appeal. Section 15(e), entitled "Mandatory Mediation," provided:

> If at any time there is a claim or dispute arising out of or relating to this Agreement, including the alleged breach, termination or validity thereof, the Parties shall within ten (10) days following mailing by either party of written notice of a dispute, engage in face-to-face negotiations in an attempt to resolve the dispute and shall, upon failing to negotiate a resolution, choose a mutually agreeable third party neutral, who shall mediate the dispute between the Parties. . . . <u>If the Parties are unable to resolve the dispute</u> in good faith within six (6) months of the date of the initial demand by either party for such fact finding, <u>the dispute shall be finally determined by a court of competent jurisdiction as set forth in Section 15(f). Neither party may bring any court proceedings until completion of the mediation process</u>, the Court shall dismiss such action with prejudice and the party bringing such action shall reimburse the other party for all its costs and expenses in defending same.

> [(Emphasis added).]

Section 15(f), entitled "Dispute Resolution Arbitration," provided:

> Mindful of the high cost of litigation, not only in dollars, but also in time and energy, the parties intend to and do hereby establish the following out-of-court alternative dispute resolution procedure to be followed in the event any controversy or dispute shall arise out of, or relating to this contract or

relating to any change orders or other changes or addendums to this contract. <u>If a dispute develops between the parties to this contract, the parties will submit to binding arbitration to address any controversy or claim arising out of, or relating to this contract or relating to any change orders or other changes or addendums to this contract</u>. The arbitration shall be conducted by and according to the rules and procedures of Construction Dispute Resolution Services, LLC. The Arbitration Award shall be binding upon the parties and shall be enforceable in any court of competent jurisdiction.

[(Emphasis added).]

Additionally, paragraph 15(g) entitled, "Jury Trial Waiver" provided in capital letters, "EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THEM AGAINST THE OTHER ON ALL MATERS ARISING OUT OF THIS AGREEMENT." Finally, paragraph 15(j) provided the agreement would be "governed . . . in accordance with the laws . . . of Pennsylvania."

Avalon filed an answer before the parties consented to mediation, which proved unsuccessful. Prior to filing its responsive pleading, Signature moved to compel arbitration. Plaintiff and Avalon both filed opposition.

In a thoughtful written opinion, Judge J. Christopher Gibson first noted that while the parties failed to reference the choice of law provision in the MPA, Pennsylvania law regarding the

enforceability of contractual arbitration provisions "generally mirror[ed]" New Jersey law. Judge Gibson rejected plaintiff's argument that the MPA was a contract of adhesion. He also rejected plaintiff's contention that Sections 15(e) and 15(f) were ambiguous, or that plaintiff could not be compelled to arbitrate its disputes with Avalon because the contract contained no arbitration provision. Lastly, Judge Gibson rejected plaintiff's claim that Signature's assertion of rights under the arbitration provision was untimely.

He entered an order staying any further proceedings and compelling plaintiff to arbitrate its claims against Avalon and Signature. This appeal followed.

Plaintiff reiterates its arguments that the MPA's arbitration provision is ambiguous because it does not clearly provide for arbitration as the proper forum, and, as a contract of adhesion, the doctrine of contra proferentem applies and the MPA must be strictly construed against Signature and in favor of plaintiff. Plaintiff also argues that it was error to compel arbitration of its claims against Avalon because the Contract contained no arbitration provision. [2]

---

[2] In Point III of its brief, plaintiff argues Judge Gibson made factual findings unsupported by the record on issues not raised
(footnote continued next page)

We have considered these arguments in light of the record and applicable legal standards. We affirm, substantially for the reasons expressed by Judge Gibson. We add only the following.

We review de novo the trial court's order compelling arbitration. Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). "In reviewing such orders, we are mindful of the strong preference to enforce arbitration agreements." Ibid. We must first determine whether the parties have entered into a valid and enforceable agreement to arbitrate disputes. Id. at 187. Second, we must determine whether the dispute falls within the scope of the agreement. Id. at 188.

Agreements to arbitrate must "be the product of mutual assent, as determined under customary principles of contract law." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014), cert. denied, __ U.S. __, 135 S. Ct. 2804, 192 L. Ed. 2d 847 (2015) (quoting NAACP of Camden Cty. E. v. Foulke Mgmt. Corp.,

_____

(footnote continued)
by Signature's motion, citing the judge's reference to Smith as plaintiff's agent in its dealings with Signature. We find any reference was irrelevant to the legal conclusions reached by the judge, which were firmly tethered to the provisions of the MPA and applicable case law. In Point IV of its brief, plaintiff argues it was error for Judge Gibson to apply Pennsylvania law, since Signature argued New Jersey law was applicable. However, plaintiff does not assert any meaningful difference exists between the two, which, based upon our review of the record, was the only point Judge Gibson intended to make in his opinion. These arguments require no further discussion. R. 2:11-3(e)(1)(E).

421 N.J. Super. 404, 424 (App. Div.), certif. granted, 209 N.J. 96 (2011), appeal dismissed, 213 N.J. 47 (2013)). "[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." Id. at 442-43 (internal quotations omitted).

Plaintiff contends the MPA is inherently ambiguous as to compelling arbitration as the proper forum for dispute resolution. It cites Section 15(e)'s language that any "dispute shall be finally determined by a court of competent jurisdiction as set forth in Section 15(f)," and the latter section's provision requiring binding arbitration.

Plaintiff relies upon our decision in Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577, 581 (App. Div. 2004), where we found the plaintiff signed two "separate and somewhat disparate arbitration clauses." We concluded "the presence of two conflicting arbitration provisions, the expression of a waiver of the right to trial by jury in small print, and the absence of any other clear warning or caution of the waiver of statutory rights, require[d] a rejection of [the] defendant's attempt to compel arbitration." Id. at 587.

Unlike the provisions at issue in <u>Rockel</u>, the MPA's alternative dispute resolution scheme was unambiguous. Under paragraph 15(e), any party could compel mediation. If unsuccessful, "the dispute shall be finally determined by a court of competent jurisdiction as set forth in Section 15(f)." Section 15(f) clearly and unequivocally compelled the parties to submit the dispute to "binding arbitration," after which any award "shall be enforceable in any court of competent jurisdiction." Unlike the provisions at issue in <u>Rockel</u>, Section 15(g) of the MPA clearly advised the parties they were waiving their right to a jury trial. We conclude the agreement was unambiguous — arbitration was the appropriate forum for resolving any dispute and the court's role was limited to enforcement of any award.

Plaintiff's contention that the MPA was a contract of adhesion is equally unavailing. Whether a contract is an unconscionable contract of adhesion, and therefore unenforceable, requires a fact sensitive inquiry. <u>Martindale v. Sandvik, Inc.</u>, 173 <u>N.J.</u> 76, 90 (2002). To determine unconscionability in this context, we consider: "[(1)] the subject matter of the contract, [(2)] the parties' relative bargaining positions, [(3)] the degree of economic compulsion motivating the adhering party, and [(4)] the public interests affected by the contract." <u>Delta Funding Corp.</u>

v. Harris, 189 N.J. 28, 40 (2006) (internal quotation marks and citation omitted).

None of these factors weighs in favor of plaintiff. The record demonstrates plaintiff was not an "average member of the public," Atalese, supra, 219 N.J. at 442, thereby triggering the level of increased scrutiny the Court has applied to consumer contracts. Rather, plaintiff was engaged in a multi-million dollar real estate development and entered into the MPA to obtain favorable tax treatment. There was no evidence that plaintiff was at an unfair disadvantage or that any public interest was implicated.[3]

Lastly, plaintiff argues it cannot be compelled to arbitrate its claims against Avalon because the Contract contained no arbitration agreement. It cites our decision in Angrisani v. Financial Technology Ventures, L.P., 402 N.J. Super. 138 (App. Div. 2008), for support. It is true that Angrisani involved two contracts, one that contained an arbitration provision and one that did not. Id. at 145. However, that is where any similarity to this case ends.

---

[3] Plaintiff's argument that the doctrine of contra proferentem applies lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(1)(E). "[C]ontra proferentem may be employed as a doctrine of last resort[,]" and "is only available in situations where the parties have unequal bargaining power." Pacifico v. Pacifico, 190 N.J. 258, 268 (2007).

In Agrisani, the plaintiff executed an employment contract with his employer that contained an arbitration provision and a second stock purchase agreement with another defendant that contained no arbitration provision. Ibid. He brought suit against both defendants and the trial court dismissed both complaints and compelled arbitration of all the plaintiff's claims under both agreements. Id. at 146-47. We reversed and bifurcated the plaintiff's actions because the plaintiff could not be compelled to arbitrate claims against the non-employer defendant simply because the employment agreement contained an arbitration provision. Id. at 152.

Plaintiff conceded at oral argument that its claims against Avalon were intertwined to some degree with its claims against Signature, such that conducting both an arbitration and a trial was impractical and unwarranted. The Court recently clarified that factual "intertwinement" of claims "as a theory for compelling arbitration" should be rejected "when its application is untethered to any written arbitration clause between the parties, evidence of detrimental reliance, or at a minimum an oral agreement to submit to arbitration." Hirsch, supra, 215 N.J. 192-93. Here, however, plaintiff sued Avalon, Signature and their representatives, all of whom were signatories to the MPA, which

contained a clear, unambiguous and enforceable arbitration agreement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3325-16T1