**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0730-17T2

446 BELLEVUE LLC,

     Plaintiff,

v.

GLOBAL LIFE ENTERPRISES,
LLC,

     Defendant-Appellant,

and

CHAI PROPERTY DEVELOPMENT, LLC,
RAFAEL LEVY; MUNI KAZMIR; JOHN
KALLIS, STEVE MITNICK, as Assignee
For the Benefit of Creditors of
Global Life Enterprises LLC,

     Defendants,

and

BASEL TERMANINI and SAMIR AYASSO,

     Defendants/Third-Party
     Plaintiffs-Respondents,

v.

PRITI PANDYA-PATEL; RAJESH GROVER;
SATYASAGAR MORISETTY; PRG CONSULTING
CORP., BOOND INT'L and MVP OF PALMS,
LLC,

Third-Party Defendants-
Appellants,

and

HEMANT MEHTA,

Third-Party Defendant.

_____

Argued June 28, 2018 — Decided July 16, 2018

Before Judges Yannotti and Haas.

On appeal from Superior Court of New Jersey,
Chancery Division, Mercer County, Docket No.
C-000030-15.

H. Matthew Taylor argued the cause for
appellant (Gordon & Rees Scully Mansukhani,
attorneys; Alexander Nemiroff and H. Matthew
Taylor, on the briefs).

Thomas M. Kenny argued the cause for
respondents (Riker Danzig Scherer Hyland &
Perretti, LLP, attorneys; Frank J. Vitolo, of
counsel and on the brief; Thomas M. Kenny, on
the brief).

PER CURIAM

Appellants Global Life Enterprises, LLC (GLE), Priti Pandya-Patel, Rajesh Grover, Satyasagar Morisetty, PRG Consulting Corp. (PRG), Boond Int'l LLC (Boond), and MVP of Palms LLC (MVP) appeal from the October 10, 2017 Chancery Division order denying their motion to compel arbitration in their dispute with respondents Basel Termanini and Samir Ayasso. Because the trial judge neglected to make any meaningful findings of fact or conclusions

of law in support of the October 10, 2017 order, we are constrained to reverse and remand for further proceedings.

In order to attempt to give some context to the issues presented by the parties on appeal, which we will ultimately not be able to resolve, we rely upon the allegations contained in respondents' third-party complaint against appellants. In doing so, we note that appellants contest a number of respondents' assertions and that the judge did not resolve any of these disputes.

In May 2013, Patel, Grover, Morisetty, Termanini, and Ayasso formed GLE[1] for the purpose of purchasing several properties in Trenton that were formerly part of a hospital campus. They intended to develop the site "into a health and wellness one-stop shop" with a number of health services available on site.

The five partners signed a written Operating Agreement (Agreement) setting forth the terms by which GLE would be operated. Termanini and Ayasso signed the Agreement as individuals and each owned 20% of the shares of GLE in their own names. The three

---

[1] GLE is a Florida member-managed limited liability company.

other partners, who also each owned 20% of the company, placed their shares in the name of corporations they controlled.[2]

Of significance to the present case, Article 10.8 of the Agreement set forth an arbitration provision, which stated:

> All disputes arising under this [A]greement shall promptly be submitted to arbitration in Pittsburgh, Pennsylvania before one arbitrator in accordance with the rules of the American Arbitration Association. The arbitrator may assess costs, including counsel fees, in such manner as the arbitrator deems fair and equitable. The award of the arbitrator shall be final and binding upon all parties, and judgment upon the award may be entered in any court of competent jurisdiction.

Article 10.6 further stated that the "[A]greement shall be governed by and interpreted and enforced in accordance with the substantive laws of the Commonwealth of Pennsylvania"; and Article 10.12 required that "[a]ny suit involving any dispute or matter arising under this Agreement may only be brought to binding arbitration through the Court of Common Pleas of [the] Commonwealth of Pennsylvania in Pittsburgh."[3]

---

[2] Patel's shares were owned by MVP; Grover's shares were owned by PRG; and Morisetty's shares were owned by Boond.

[3] At the time the Agreement was signed, respondents Termanini and Ayasso resided in Pennsylvania, as did appellant Satyasgar. Patel and Grover lived in New Jersey.

In September 2013, GLE purchased the properties. Respondents assert they contributed $2 million to finance the purchase, which was secured by a mortgage on one of the properties.

Thereafter, GLE's development plans did not go well. In September 2014, the five partners agreed to attempt to sell the properties, and they retained an agent to assist them in this effort.

The agent put the partners in touch with Hemant Mehta, who offered to buy the properties for $1.5 million. Mehta formed a company called 446 Bellevue LLC (Bellevue) to complete the purchase. Respondents allege that Mehta then changed the terms of his offer and the deal fell apart. Later in 2014, Patel located another potential purchaser, Munir Kazmir, who was a principal in a company called Chai Property Development LLC (Chai). In April 2015, Chai agreed to purchase the properties for $4.5 million.

Bellevue then filed a complaint against GLE, alleging that it had an agreement to buy the properties, which GLE breached by attempting to sell them to Chai. While this litigation progressed, GLE failed to pay taxes on the properties, and they became subject to a tax lien. At an auction, a company called NJNY Lien purchased one of the properties, located at 446 Bellevue Avenue in Trenton. Respondents allege that Bellevue had an agreement with this company to transfer this property to Bellevue.

A-0730-17T2

In February 2016, four of the partners agreed to liquidate all of GLE's assets and dissolve the company.[4] GLE made a general assignment for the benefit of creditors and retained an attorney to act as its assignee for the purpose of selling the assets.

Respondents Termanini and Ayasso allege that in June 2016, GLE entered into a fraudulent settlement agreement of its litigation with Bellevue. Under the terms of the settlement, GLE admitted that it breached, and tortuously interfered with, the agreement Bellevue alleged it had with GLE to purchase all the properties. GLE also agreed to convey three of the properties to Bellevue for $10, and consented to the entry of a $7 million judgment against GLE in Bellevue's favor. This judgment purportedly represented compensatory damages to Bellevue in connection with the costs it incurred in acquiring the 446 Bellevue Avenue property from NJNY Lien.

On August 12, 2016, the trial judge entered a consent judgment incorporating the terms of the settlement between Bellevue and appellants. Respondents alleged that the consent judgment was void because appellants lacked the authority to consummate it under the parties' Agreement.

---

[4] Patel cast the lone dissenting vote.

In February 2017, Bellevue filed its third amended complaint in the still extant litigation. In this pleading, Bellevue named respondents Termanini and Ayasso as defendants for the first time, and sought damages against them for allegedly inducing GLE to commit the breach and other wrongs that were the subject of the settlement agreement. Bellevue did not name the three appellants as individual defendants. Respondents allege that appellants made a secret deal with Bellevue that if they agreed to the settlement, Bellevue would not pursue any claims against them in their individual capacities.

In June 2017, respondents responded by filing an eight-count, third-party complaint against appellants and their three companies, with additional claims directed against Bellevue and Mehta. Specifically, respondents asserted that appellants breached their fiduciary duty and duty of loyalty to them (counts one and two); breached the terms of the Agreement (count three); and committed legal and equitable fraud (count eight). In count four, respondents alleged that appellants, Bellevue, and Mehta conspired against them. In the remainder of their third-party complaint, respondents raised separate claims against Bellevue and Mehta, including tortious interference (counts five and six), and legal and equitable fraud (count seven).

In August 2017, appellants filed a motion to compel arbitration pursuant to Article 10.8 of the Agreement. They asserted that the matters raised in respondents' third-party complaint involved "disputes arising under" the Agreement and, therefore, arbitration was required.

Respondents opposed the motion, and asserted that the arbitration provision in the Agreement did not apply to any of the matters in dispute between the parties. Respondents also alleged that because Bellevue and Mehta were not parties to the Agreement, the counts of the complaint that pertained to them could not be arbitrated. Therefore, respondents argued that no part of the dispute should be referred to arbitration because doing so would lead to "piecemeal litigation."

The task presented to the trial judge by the parties' competing positions was clear. When a motion to compel arbitration is filed, a court must conduct "a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). "Although arbitration is traditionally described as a favored remedy, it is, at its heart, a creature of contract." Kimm v. Blisset, LLC, 388 N.J. Super. 14, 25 (App. Div. 2006) (citations omitted). "Thus, courts examine arbitration provisions 'on a

case-by-case basis.'" Waskevich v. Herold Law, P.A., 431 N.J. Super. 293, 298 (App. Div. 2013) (quoting Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577, 580 (App. Div. 2004)).

The trial judge did not perform this required analysis and, instead, simply denied appellant's motion to compel arbitration. His short oral decision does not quote, or even cite, Article 10.8 of the Agreement. The judge made no fact findings at all, thus leaving the parties' disputed factual allegations completely unresolved. The judge did not review any of the claims respondents raised in their third-party complaint that appellants alleged were subject to arbitration. The judge also failed to consider whether the motion should be "governed by and interpreted and enforced in accordance" with Pennsylvania law as stated in Article 10.6 of the Agreement, or brought in the first instance in the Court of Common Pleas in Pittsburgh under Article 10.12.

Instead, the judge listed two conclusory bases for his decision denying the motion. First, the judge referred to this court's unpublished decision in Kaufman v. Maresca, No. A-3611-04 (App. Div. Jan. 3, 2006), and stated:

> In terms of looking at the arbitration, of course, arbitration is highly favored, and there's always a presumption that there should be arbitration, but it's not absolute. Obviously, we have the Kaufman case here. It's an unpublished case, but it's a case that makes a lot of sense and talks about the party

— "When the party seeking enforcement of an arbitration clause does so with less than clean hands" — I'm not saying there weren't clean hands here, but what I'm saying . . . obviously is that this operating agreement wasn't complied with, so there's an analogy there — "where arbitration will not fully resolve the entire controversy," — which it wouldn't do — "and where equity jurisprudence is particularly adapted to do complete justice in the situation."

We disagree with the judge's analysis. First, an unpublished opinion has no prejudicial value. Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 559 (2015); see also R. 1:36-3. Just as importantly, Kaufman is completely distinguishable from the facts of this case, as we have been able to discern them. In Kaufman, the party seeking to compel arbitration initially filed his action in the Law Division. (slip op. at 3). Thus, unlike appellants in the present case, this party "ignored the very terms of the operating agreement on which he relie[d] to compel arbitration." Id. at 8.

In addition, the party waited to seek to compel arbitration until after the court had set a trial date. Id. at 4. In this case, however, appellants filed their motion within two months of their receipt of respondents' third-party complaint.

Under these "unique circumstances[,]" where "the party seeking enforcement of the arbitration clause [did] so with less than clean hands," the Kaufman court held that the trial court

properly denied the party's motion. While the judge relied upon Kaufman in this case, he also contradictorily stated, "I'm not saying there weren't clean hands here[.]" Thus, Kaufman provided no support for the judge's denial of appellants' motion to compel arbitration.

The other basis for the judge's decision was his belief that because certain of the claims, which he did not specifically identify,[5] might not be subject to arbitration, none of the matters raised in respondent's third-party complaint could be referred to arbitration even if they fell under the broad terms of Article 10.8 of the Agreement.[6] The judge stated:

> So obviously, this would be piecemeal litigation. There's no dispute about that. There's conspiracy and fraud claims here involving multiple parties, some of whom — one of whom would be part of the arbitration. So there's really no way that this case can be litigated through Superior Court and through

---

[5] We presume the judge was referring to the counts of respondents' third-party complaint that solely involved Bellevue and Mehta. Again, however, we cannot be sure because of the absence of fact findings.

[6] It appears that the judge also incorrectly relied upon the unpublished Kaufman decision for this conclusion. In addition to concluding that the party seeking arbitration in that case did not act with clean hands, the Kaufman panel noted that "arbitration [would] not resolve the entire controversy," and that "equity jurisprudence [was] particularly adapted to do complete justice in the situation," as additional grounds for affirming the trial court's decision in that case to deny the motion to compel arbitration. (slip op. at 10).

11

> an arbitration. They have to be combined.
> And even though it's a favored provision, the
> Court's going to deny the application to
> enforce the arbitration clause.

This ruling is contrary to the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1 to 16, which "was enacted 'to abrogate the then-existing common law rule disfavoring arbitration agreements[.]'" Hirsch v. Amper Financial Services, LLC, 215 N.J. 174, 187 (2013) (also noting that the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, "is similar in nature to the FAA" and likewise favors the enforcement of arbitration agreements). Importantly, the FAA "requires piecemeal resolution when necessary to give effect to an arbitration agreement." EPIX Holdings Corp. v. Marsh & McLennan Companies, Inc., 410 N.J. Super. 453, 479 (App. Div. 2009) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 (1983); see also Waskevich, 431 N.J. Super. at 300.

Thus, when a trial court is faced with a situation where some of the claims are subject to arbitration and some are not, the court should bifurcate the claims, sending those covered by the parties' agreement to arbitration, while keeping jurisdiction of those that are not. Waskevich, 431 N.J. Super. at 300. The court may also stay the litigation pending the conclusion of the arbitration. Hirsch, 215 N.J. at 196 n.5. In addition, "if any claim is severable from the claims proceeding to arbitration"

between the parties, the court "may limit the stay to certain claims." Ibid. (citations omitted).

These rules apply "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." EPIX, 410 N.J. Super. at 479-80 (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985)). Thus, the fact that one of the parties could be inconvenienced by proceeding in two forums, this "is not a sufficiently compelling ground to overcome New Jersey's strong public policy favoring arbitration where the parties have expressly agreed to this method of dispute resolution." Id. at 480. Accordingly, "our courts have routinely permitted litigation in separate forums where a plaintiff alleges claims against multiple defendants, some of whom have agreed to arbitrate their disputes and others have not, even where common questions of law and fact create significant overlap." Ibid.

The judge did not consider any of these established precedents in denying appellant's motion to compel arbitration, and this appeal followed.[7] On appeal, appellants argue that the judge should have submitted all of the issues between the parties to arbitration or, in the alternative, severed the claims involving

_____

[7] In a separate ruling, the judge granted respondents' motion to vacate the consent judgment between Bellevue and GLE. None of the parties have appealed that determination and, therefore, it is not before us.

only Bellevue and Mehta, while sending the remaining claims to arbitration.

As already noted, we are unfortunately unable to address appellants' contentions and respondents' opposition to same because the judge did not make adequate findings of fact or conclusions of law. No one — not the parties and not this court — can properly function or proceed without some understanding of why a judge has rendered a particular ruling. See Curtis v. Finneran, 83 N.J. 563, 569-70 (1980) (requiring trial court to clearly state its factual findings and correlate them with the relevant legal conclusions). The failure to provide findings of fact and conclusions of law "constitutes a disservice to the litigants, the attorneys and the appellate court." Ibid. (quoting Kenwood Assocs. v. Bd. of Adjustment, Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976).

In this case, we cannot be sure whether the facts respondents allege in their third-party complaint are accurate or whether, as appellants assert, their factual allegations are neither complete nor correct. The judge did not analyze any of the individual counts of the complaint, other than to note that "[t]here's conspiracy and fraud claims here involving multiple parties[.]" The brief explanation for the judge's ruling is not grounded in the applicable law. Thus, there is nothing for us to review.

A-0730-17T2

We acknowledge that our review of an order denying a motion to compel arbitration is de novo. Hirsch, 215 N.J. at 186. However, as the court recently stated, "our function as an appellate court is to review the decision of the trial court, not to decide the motion tabula rasa." Estate of Doerfler v. Federal Ins. Co., ___ N.J. Super. ___ (App. Div. 2018) (slip op. at 5). Under these circumstances, we have no alternative but to reverse the October 10, 2017 order, and remand this matter to the trial court for further proceedings. In remanding this matter, we do not suggest a preferred result, but only that the trial court reconsider the matter and fulfill its duty to the parties to fully address the factual and legal arguments presented in this case.

On remand, we suggest that the court promptly conduct a conference with the parties to determine whether additional briefing and oral argument is necessary to enable the court to address the issues raised. The court should then consider appellants' motion anew and render a decision that includes detailed findings of fact and comprehensive conclusions of law. By discharging its duty in this regard, the court will ensure that "the litigants have been heard and their arguments considered. Justice requires no less." Bailey v. Bd. of Review, 339 N.J. Super. 29, 33 (App. Div. 2001).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16