46 N.J. Super. 272 (1957)
134 A.2d 601
JAMES TOLLAND AND MADELINE TOLLAND, PLAINTIFFS,
v.
GERARD LISTA, DEFENDANT. JOSEPH LISTA, MATERIAL CLAIMANT, PLAINTIFF-APPELLANT,
v.
GERARD LISTA, TRADING AS G. LISTA CONSTRUCTION COMPANY, CONTRACTOR, DEFENDANT, AND JAMES TOLLAND AND MADELINE TOLLAND, HIS WIFE, OWNERS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 4, 1957.
Decided September 13, 1957.
*274 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Albert Burstein argued the cause for appellant Joseph Lista (Messrs. Basile & Delchop, attorneys).
Mr. Herbert L. Smith argued the cause for respondents Tolland (Mr. Martin J. Cummins, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Joseph Lista sued in the County Court to enforce a materialman's lien against the owners of the premises, the Tollands, and the builder, who is his son Gerard Lista. The Tollands subsequently brought an action in the Superior Court against Gerard Lista, claiming damages for any sum for which they might be adjudged liable to Joseph Lista, as well as damages for failure to complete the job and for defective workmanship. The two actions were consolidated in the Superior Court and heard by a judge sitting without a jury. The Tollands took a judgment of $1 and costs against Gerard Lista. There is no appeal from that judgment. In Joseph Lista's action judgment was entered in his favor against defendant Gerard Lista, and in favor of defendants Tolland against plaintiff. Joseph Lista appeals from that part of the judgment entered in favor of the Tollands. The factual background necessary to a determination of the appeal follows.
In February 1955 Gerard Lista entered into a written agreement with the Tollands to erect a one-family dwelling on their property in Fort Lee, N.J., for $11,900. Among other things, this contract provided that Gerard was to secure and install a Weyerhauser "shell" as the basic form of the house. The Tollands paid Gerard the first $1,900 *275 required by the contract, and he proceeded to put in the foundation and footings. On April 12, 1955 Gerard contracted for the purchase of the shell from Aschoff & Sons, Inc. for $3,350, delivery being scheduled for May 5 following. Aschoff refused to deliver the shell without cash payment. Gerard did not have the money and Aschoff would not extend him credit. In this posture of affairs Gerard turned to his father Joseph for help. Joseph eventually advanced the money, $2,000 being paid on April 25, 1955 and $1,350 on May 6, 1955, at which time Aschoff delivered the shell to Gerard at the construction site. The billhead accompanying the delivery read that the shell had been sold to "G. Lista." On June 11, 1955 Gerard received a payment on account of the contract price of $3,300 out of the $10,000 mortgage commitment obtained by the Tollands from a bank, at which time the roof was on the building. (Under his agreement with the Tollands Gerard was to receive one-third of the $10,000 when the foundation was completed, the roof on, and the building completely roof-enclosed.)
Joseph Lista filed a notice of intention with the County Clerk on April 12, 1955. Thereafter, on December 12, he filed a mechanic's lien claim stating that there was a balance of $3,500 due him for labor and materials necessary for erecting the Tolland home, all the labor having been performed and the materials furnished between June 20 and August 22, 1955. Joseph instituted his action based on the lien claim on December 21, 1955.
In the view entertained by the trial judge, the entire case resolved itself down to the question of whether Joseph Lista was the supplier of the shell pursuant to the notice of intention filed, or whether Aschoff & Sons, Inc. had in fact sold the shell to Gerard Lista, with the father merely lending the money to his son or acting as a guarantor of the purchase price. A subsidiary question, which the trial judge found unnecessary to determine, was whether the action to enforce the mechanic's lien was commenced within four months from the date the last labor was performed or materials *276 furnished, as required by N.J.S. 2A:44-98. The trial court found as a fact that Joseph Lista "had failed to prove by a preponderance of the evidence that the material in question was ordered by him or delivered by him or owned by him at the time of the delivery of the material in question by Aschoff and Son." In the oral opinion delivered at the close of the case, the trial judge said his finding was based upon the credibility of the witnesses and the weight which he, as trier of the facts, must give to the evidence. He found that Joseph Lista had paid for the materials in cash, but that this payment was made on behalf of his son Gerard.
Joseph Lista testified through an interpreter. And on Gerard's cross-examination it was brought out that when he and his father spoke with Aschoff, it was with Gerard's help as interpreter. From this the trial judge said he could not conceive that a man like plaintiff could have held the discussions with Aschoff testified to by Gerard.
The basis of a mechanic's lien claim is the existence of a debt due and owing for labor performed or materials furnished. Plaintiff admits that if the money advanced by him was simply a loan to his son, who as builder then purchased the materials which went into the job, then he is not entitled to the lien claimed. Evans v. Lower, 67 N.J. Eq. 232, 235 (Ch. 1904). However, he argues the transaction was in effect a novation wherein he was substituted for his son as purchaser of the shell from Aschoff, and insists the trial court's finding that he simply advanced the money on behalf of his son was contrary to the weight of the evidence.
For a novation to exist it is necessary that a third party be substituted as either the debtor or creditor under the original contract. A novation, in the language of 2 Restatement, Contracts, § 424, p. 798 (1932), is a contract which discharges immediately a previous contractual duty or a duty to make compensation, creates a new contractual duty, and includes as a party one who neither owed the previous duty nor was entitled to its performance. And *277 see 6 Williston, Contracts (rev. ed. 1938), §§ 1865, 1866, 1869, 1870, pp. 5239-5246, 5253-5257. Where a party merely performs for the benefit of the debtor, and the creditor accepts performance from him, there is not necessarily a substitution of parties, although the performance by the third party would discharge the duty of the original obligor. See the examples contained in 2 Restatement, Contracts, §§ 424 et seq., p. 798 et seq., and the discussion in Williston, op. cit., § 1870, p. 5254. But this does not mean there is a substitution of the new contract for the old one.
In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed. Sixteenth Ward Building & Loan Ass'n of Newark v. Reliable Loan, etc., Co., 125 N.J. Eq. 340, 342-3 (E. & A. 1939); J. Shlainsey, Inc. v. Aitken, 127 N.J.L. 246, 248 (E. & A. 1941). Thus, if there is any credible evidence to support the trial court's determination that what the parties intended was not a substitution of Joseph Lista as purchaser of the shell, but merely the payment by him of the purchase price and the acceptance by Aschoff of this payment, then there was no debt created which would enable plaintiff to maintain his mechanic's lien action under N.J.S. 2A:44-66 and the judgment under review should not be disturbed.
It is elementary that on appeal this court is not disposed to overthrow conclusions of the trier of the facts which find their support in credible evidence. Due regard must be had for the opportunity of the trial court, sitting without a jury, to judge of the credibility of the witnesses. R.R. 1:5-4(b).
We have reviewed the record and find the evidence amply supports the trial court's conclusion that Aschoff sold the shell to Gerard and not to his father, and that the father merely supplied the money for the benefit of his son. Aschoff, the supplier, testified he sold the shell to Gerard Lista; his dealings were with him, and he had none with Joseph. Gerard testified he had contracted with *278 Aschoff to buy the shell, and although his testimony as to what happened in the discussions he and his father had with Aschoff is somewhat conflicting, there was enough for the court reasonably to conclude that the father was advancing the money so that Gerard might get the shell and proceed with the erection of the Tolland home.
We find the evidence sufficient to lend solid support to the conclusions of the trial court, and the judgment is therefore affirmed.