ALFRED RILEY AND ALBERTA RILEY, INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED, PLAINTIFFS-APPELLANTS, v. NEW RAPIDS CARPET CENTER, A NEW YORK CORPORATION; IDEAL DESIGNS, INC., A NEW YORK CORPORATION; AND CHARGE ACCOUNT FACTORS, INC., A NEW YORK CORPORATION, SUED INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, DEFENDANTS-APPELLEES.

Argued March 20 and 21, 1972—Decided July 6, 1972.

220

Mr. *Henry L. Woodward* argued the cause for appellants (*Messrs. David G. Laidman* and *Barry L. Shapiro,* on the brief; *Mr. Richard N. Tilton, Newark Legal Services Project; Mr. Joshua M. Levin, Messrs. Levin and Chenkin; Newark-Essex Joint Law Reform Project,* attorneys).

Mr. *Melville D. Miller, Jr.,* argued the cause for New Jersey State Office of Legal Services, *amicus curiae* (*Mr. James J. Ciancia,* on the brief).

Mr. *Sheppard A. Guryan* argued the cause for appellees New Rapids Carpet Center and Charge Account Factors, Inc. (*Messrs. Lasser, Lasser, Sarokin* and *Hochman,* attorneys).

Mr. *Jerome S. Lieb* argued the cause for appellee Ideal Designs, Inc. (*Messrs. Lieb, Teich and Berlin,* attorneys).

The opinion of the Court was delivered by

WEINTRAUB, C. J. This suit was brought as a class action. On pretrial applications the trial court granted judgment in favor of one defendant and denied authorization to maintain the suit as a class action, permitting it to proceed solely on behalf of the named plaintiffs against the remaining defendants. The refusal to authorize a class action denied the main thrust of the litigation. Plaintiffs moved before the Appellate Division for leave to appeal. The Appellate Division denied the motion. A motion for leave to appeal was then made before us and it was granted.

The complaint alleges fraud and sundry statutory violations in the sale of carpeting for household use. Defendant

Ideal Designs, Inc. (herein Ideal) advertised on WOR-TV that it would sell 150 square feet of nylon carpet for $77, with a "free gift" of an upright vacuum cleaner or an 8' x 12' rug. The complaint charges the commercial was merely bait, the advertised product being disparaged by the visiting salesmen who pushed more expensive products, and indeed without the advertised "free gift." In short, the complaint alleged bait-and-switch, a sales tactic denounced as unlawful by the Consumer Fraud Act. *N. J. S. A.* 56:8–2.2, added to that act by amendment in 1969, reads:

The advertisement of merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same as the advertised price is an unlawful practice and a violation of the act to which this act is a supplement.

The TV commercial was beamed to New Jersey as well as New York, listing telephone numbers in both States. New Jersey residents who called actually dealt, not with Ideal, but with defendant New Rapids Carpet Center (herein New Rapids). Plaintiffs alleged Ideal and New Rapids were engaged in a joint enterprise. Both defendants denied that relationship, urging positions which, absent further explanation, could be found to intensify the alleged pattern of fraud. New Rapids says Ideal sold it "leads" of persons interested in carpet. Ideal denies that it did, insisting the advertising agent, which it labels as "an independent advertising firm," merchandised the New Jersey leads on its own account. Thus, if plaintiffs are given the best view of the record as must be done at this stage, it could be found that Ideal never intended to sell carpet to New Jersey residents (indeed Ideal admits this is so), and that the commercial was intended only to obtain the names of New Jersey residents who were in the market for carpet to the end that Ideal could sell a list of those prospects to another vendor who would be free to exploit their interest without regard to the terms of offer in the commercial. And as to New Rapids, it could be inferred that it was indifferent to the advertised

basis upon which Ideal gathered the leads, intending only to seize an opportunity to sell to people who had been artfully led to reveal an interest in the commodity.

The foregoing seems to be a basic allegation of fraud applicable to the entire class of New Jersey purchasers. Plaintiffs, who are husband and wife, charge they were subjected to additional fraudulent acts. They say they refused to be switched to a more expensive carpet and signed an order calling for a total payment of $77, only to find later that additional charges were inserted for a total of $682. Plaintiffs deny they signed the "Security Agreement-Retail Installment Contract," insisting the signatures thereon are forgeries. Plaintiffs say they asked for but never received the advertised "free gift." They say too that the carpet installed was inferior to the sample, was wholly unfit, and was poorly installed. Plaintiffs also charge violations of sundry consumer laws, which we need not detail here. Affidavits of six other purchasers, who are not parties, were submitted on the motion. They lend support to the bait-and-switch allegation. They also charge sundry acts of fraud and overreaching which are diverse but which, it might be contended, are nonetheless joined by a common purpose to bilk buyers by any convenient stratagem.

The third defendant is Charge Account Factors, Inc., to which New Rapids transferred the resulting time obligations. It appears that a substantial number of suits have been instituted in New York against New Jersey residents, some by New Rapids and most by Charge Account Factors, Inc. The affiants who are defendants in such suits insist they were never served. None of the defendants were authorized to do business in New Jersey.

We of course are not deciding the ultimate factual issues in the case. We have summarized the record to reach the legal questions, and in doing so we accorded plaintiffs every favorable view, and this because the order and judgment were entered upon pretrial motion.

■■ As stated earlier, final judgment was entered as to one defendant. That defendant is Ideal. We think Ideal's motion should have been denied. Whether the TV commercial was an offer or an invitation for an offer, Ideal could not unilaterally assign away the burden of its part in the transaction it thus solicited. It is a familiar doctrine that a party cannot relieve himself of the obligations of a contract without the consent of the obligee. 3 *Williston, Contracts* (3d ed. 1960 Jaeger) § 411, *pp.* 18–21; 4 *Corbin, Contracts* (1951) § 866, *p.* 452. It is equally just to say that an advertiser in a TV commercial who solicits contracts ostensibly on his own behalf may not be heard to say the contract which ensued was made with someone else. Absent plain evidence that a purchaser was fully informed that the advertiser was to be relieved of all responsibility and thereupon consented to substitute an independent economic interest as the party obligor, Ideal could be found to be responsible for performance of the contract by New Rapids no matter what may be the obligation as between those companies.

Further, Ideal might be found liable tortiously for the losses suffered by persons induced by its advertisement to become involved with New Rapids and Charge Account Factors, Inc. A trier of the facts might ultimately hold that Ideal was a party to a fraud in that it did not intend to sell carpet to New Jersey residents on the advertised basis or indeed on any basis at all, and that it sought by that false pretense to obtain leads in order to vend them to others, with no assurance that the purchasers of the leads would abide by the advertisement and without telling the prospect that his interest in buying carpet had been sold to a stranger to the advertisement.

We turn then to the question whether the trial court was correct in denying authorization of a class action.

■ The subject of consumer fraud has emerged as a major problem of our commercial scene. Being unequal to the vendor, the consumer is easily overreached. When the selling pitch is directed to the unsophisticated poor, the

problem is heightened, for the dollar impact upon the victim is intensified and a society which provides for its poor itself feels the burden of the imposition. The reputable vendor, too, has a stake in the suppression of dishonest competition. If each victim were remitted to an individual suit, the remedy could be illusory, for the individual loss may be too small to warrant a suit or the victim too disadvantaged to seek relief. Thus the wrongs would go without redress, and there would be no deterence to further aggressions.[1] If there is to be relief, a class action should lie unless it is clearly infeasible. *Kugler v. Romain*, 58 *N. J.* 522, 535–541 (1971) ; *Vasquez v. Superior Court of San Joaquin County*, 4 *Cal.* 3d 800, 94 *Cal. Rptr.* 796, 484 *P.* 2d 964 (1971) ; 3B *Moore, Federal Practice* (1969) § 23.45[3], *pp.* 807–808; Starrs, "The Consumer Class Action," 49 *Boston U. L. R.* 211, 407 (1969) ; Eckhardt, "Consumer Class Actions," 45 *Notre Dame Lawyer* 663 (1970) ; Degnan, "Adequacy of Representation in Class Actions," 60 *Calif. L. Rev.* 705 (1972) ; comment, 70 *Mich. L. Rev.* 338 (1971) ; *cf. Silverstein v. Shadow Lawn Savings & Loan Ass'n*, 51 *N. J.* 30, 44–45 (1968).

Legislatures have authorized public officials to sue for a class of victims and to restrain further depredations. Thus our Consumer Fraud Act, *N. J. S. A.* 56 :8–1 *et seq.,* authorizes the Attorney General to bring such actions. There are advantages when a public official is the plaintiff, but, as was noted in *Kugler v. Romain, supra,* 58 *N. J.* at 540, staff

---

[1] It has been suggested that even if the victims and the amounts of their respective losses may not be easily identified, the public interest would be served by ordering the total ascertainable illicit gain to be deposited into court, to be held for such claimants as may appear, with the balance passing eventually to the State as abandoned or unclaimed property. *Daar v. Yellow Cab Company,* 67 *Cal.* 2d 695, 63 *Cal. Rptr.* 724, 738 n. 15, 433 *P.* 2d 732, 746 n. 15 (1967). The thesis, of course, is that it would be therapeutic to compel the unconscionable vendor to disgorge. The California Supreme Court did not pass upon that proposal, and we need not in this case.

limitations are such that the private class action must be accepted if the objectives are to be realized in this area.

Our class-action rule, *R.* 4:32, is a replica of Rule 23 of the Federal Rules of Civil Procedure as amended in 1966. The rule embraces consumer suits. Kaplan, "1966 Amendments of the Federal Rules of Civil Procedure (I)," 81 *Harv. L. Rev.* 356, 393 (1967). *R.* 4:32–1 sets forth in subsection (a) the general prerequisites for all class actions:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Subsection (b) of that rule demands one of three further requisites. The consumer class action comes within (b)(3), under which the action may be maintained if:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The factors pertinent to the findings include: first, the interest of members of the class in individually controlling the prosecution or defense of separate actions; second, the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; third, the difficulties likely to be encountered in the management of a class action.

Speaking of (b)(3), the Federal Advisory Committee commented, 39 *F. R. D.* 98, 103 (1966):

The court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual members. It is only where this predominance exists that economies can be achieved by means of the class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within

the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.

No doubt a consumer class action may hold problems not found in an antitrust action or a stock fraud suit where some rather precise act or omission radiates harm throughout the class. If the representations to consumers are so diverse that all of the individual transactions must be tried, there would be no economy of effort and expense and the litigation would be unmanageable. The 1966 amendment added a new dimension to the problem, because, whereas prior to the amendment a member of this so-called "spurious" class who did not intervene was not bound by an adverse judgment, the amendment makes an unfavorable judgment binding upon all members "who do not request exclusion." *R.* 4:32–2(b) and (c); *R.* 4:32–3.

Thus determinations as to the existence of a class and its membership are now more meaningful and may present more difficult problems as to manageability. But the remedy is attended by the resourcefulness and ingenuity which have always been characteristic of equity, and the rules should be applied liberally to the end the aims of a class action may be achieved if it is possible to do so with fairness to the litigants. *Lusky v. Capasso Brothers,* 118 *N. J. Super.* 369, 373 (App. Div. 1972); *Eisen v. Carlisle & Jacquelin,* 391 *F.* 2d 555, 563 (2 Cir. 1968); *Green v. Wolf Corp.,* 406 *F.* 2d 291, 298, 300 (2 Cir. 1968), cert. denied, *Troster, Singer & Co. v. Green,* 395 *U. S.* 977, 89 S. Ct. 2131, 23 *L. Ed.* 2d 766 (1969); *Esplin v. Hirschi,* 402 *F.* 2d 94, 99–101 (10 Cir. 1968), cert. denied, 394 *U. S.* 928, 89 S. Ct. 1194, 22 *L. Ed.* 2d 459 (1969); *Kahan v. Rosenstiel,* 424 *F.* 2d 161, 169 (3 Cir. 1970), cert. denied *Glen Alden Corp. v. Kahan,* 398 *U. S.* 950, 90 *S. Ct.* 1870, 26 *L. Ed.* 2d 290 (1970); *In re Antibiotic Antitrust Actions (Consumer Class Actions),* 333 *F. Supp.* 278, 289 (S. D. N. Y. 1971).

■■ To that end, a court should be slow to hold that a suit may not proceed as a class action. The nature of a consumer fraud case is such that a plaintiff may not be able to demonstrate at once that all the requisites are met and that no fatal problem of manageability will be encountered. R. 4:32–2(a) reads:

> As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditioned, and may be altered or amended before the decision on the merits.

In providing that the determination is to be made "as soon as practicable after the commencement" of the action, the draftsman was mindful of the difficulties involved and of the latitude required. It would be rare that a decision to deny a class action should be made on the face of the complaint. *Beckstead v. Superior Court of Los Angeles County,* 21 *Cal. App.* 3d 780, 98 *Cal. Rptr.* 779 (Ct. App. 1971). The trial court may delay a determination. The court may order conditional or tentative approval. *Kronenberg v. Hotel Governor Clinton, Inc.,* 41 *F. R. D.* 42 (S. D. N. Y. 1966); *Zeigler v. Gibralter Life Insurance Company of America,* 43 *F. R. D.* 169, 173 (D. S. D. 1967); *Brennan v. Midwestern United Life Insurance Co.,* 259 *F. Supp.* 673, 683 (N. D. Ind. 1966); *City of Philadelphia v. Emhart Corporation,* 50 *F. R. D.* 232 (E. D. Pa. 1970). Or a court may call for preliminary hearings upon any facet of the class-action issue and permit or direct appropriate discovery of defendants in that regard. *Eisen v. Carlisle & Jacquelin,* 391 *F.* 2d 555, 570 (2 Cir. 1968); same case on remand, 50 *F. R. D.* 471 (S. D. N. Y. 1970) and 52 *F. R. D.* 253 (S. D. N. Y. 1971); *Herbst v. Able,* 278 *F. Supp.* 664 (S. D. N. Y. 1967); see *Reichlin v. Wolfson,* 47 F. R. D. 537 (S. D. N. Y. 1969).

■ In the case at hand, the trial court decided that a class action should not be permitted because of the diverse specifications of fraud in the affidavits of others which plain-

tiffs produced. The trial court could have withheld approval at that point, but a final decision against plaintiffs was premature. In fact, wholly apart from those several allegations, there was a showing of a possible basis for class relief. We refer to the showing, recounted above, on the issue whether Ideal and New Rapids ever intended to sell carpet on the terms advertised. When, as here, the approach to the consumer appears to be sharp or slick, a plaintiff should be permitted to seek relevant data from defendants so that an informed decision may be made on the class-action issue. Here, for example, it might be revealing if plaintiffs were permitted to inquire of defendants as to how many sales were made on the advertised basis and how many "free gifts" were delivered. The answers might support the charge that a bait-and-switch tactic was employed, or as suggested by the positions taken by New Rapids and Ideal, that the advertisement was merely a pretext to obtain salable leads of persons in the market for carpet. We, of course, do not intend by what we have said to limit the discovery. We merely point to one aspect to indicate the opportunity which discovery offers on the preliminary question whether a class action is appropriate.

The judgment in favor of Ideal and the order denying authorization as a class action are reversed and the matter remanded to the trial court for further proceedings consistent herewith.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.