261 N.J. Super. 332 (1993)
618 A.2d 914
LOUIS FUSCO, PLAINTIFF,
v.
CITY OF UNION CITY, DEFENDANT-APPELLANT, AND C & C REALTY AND C & C ASSOCIATES, DEFENDANTS-RESPONDENTS, AND THE PLANNING BOARD OF THE CITY OF UNION CITY, ST. MICHAEL'S DEVELOPMENT AND HOWARD SAVINGS BANK, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1992.
Decided January 14, 1993.
*334 Before Judges BILDER and BAIME.
Leon S. Segen argued the cause for appellant (Scarinci & Hollenbeck, attorneys; Leon S. Segen, on the brief).
Richard A. Brovarone argued the cause for respondents (Oury, Mizdol & Brovarone, attorneys; Richard A. Brovarone, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
At issue is whether a creditor's acceptance of partial payment of a debt by a third person creates a novation extinguishing the obligation of the original debtor. Union City appeals from the *335 Law Division's order, denying its motion to compel C & C Realty and C & C Associates (C & C) to comply with the terms of a settlement agreement. A stipulation of settlement required C & C to make periodic payments to Union City in return for its right to develop certain property. The property was subsequently sold to St. Michael's Development Corp. (St. Michael) which was also assigned C & C's rights and obligations under the settlement agreement. In denying the motion to enforce the settlement against C & C, the Law Division held that the City's public acknowledgment of the assignment and its acceptance of part performance by St. Michael created a novation discharging the original obligor. We disagree and reverse.
The facts are not in dispute. In 1986, Louis Fusco instituted a taxpayer's suit in which he sought to enjoin C & C from constructing residential units on property known as the monastery site. While the litigation was pending, C & C sold the property to Hugh De Fazio. The sale was contingent upon C & C's resolution of the Fusco suit. On October 31, 1986, a stipulation of settlement was entered between C & C, Fusco and the City. Under the stipulation, C & C agreed to construct two parks on land to be dedicated to the City. In addition, C & C was obliged to pay the City $75,000 in installments. The first $45,000 payment was to be made upon issuance of the requisite building permits. The remaining $30,000 was to be paid in yearly installments of $15,000.
On October 28, 1987, C & C and De Fazio executed a written contract for the sale of the property. Among other things, the contract contained an assignment of C & C's obligations under the settlement to construct the two parks and to pay the City $75,000 in accordance with the agreed upon schedule. St. Michael was then incorporated, with De Fazio as its principal, and was assigned the contract for the purchase of the monastery site, including assumption of C & C's duties under the stipulation of settlement.
*336 It is uncontradicted that the City was not present during the negotiations between C & C and De Fazio and knew nothing of the intended assignment. However, the City subsequently accepted the $45,000 installment from De Fazio. The occasion was memorialized by a "symbolic photograph" depicting an enlarged $45,000 check. In 1988, the City accepted a deed from St. Michael for a public park. When the City failed to receive the $15,000 installments, demands were made on De Fazio who assured the Mayor that St. Michael would satisfy its obligations.
On November 9, 1990, the City filed a motion to enforce litigant's rights against C & C. The matter apparently remained dormant until January 24, 1991, when a consent judgment was entered, requiring St. Michael to pay the remaining $30,000 in $10,000 installments. The judgment specifically recited that the City "reserved all rights ... to proceed against C & C" if its obligations under the stipulation of settlement were not satisfied.
After St. Michael went into bankruptcy, the City moved to enforce the settlement against C & C. In his letter opinion denying the motion, the Law Division judge found an implied novation by reason of the City's acceptance of partial performance by St. Michael and its reliance upon De Fazio for satisfaction of C & C's obligations. The judge concluded that the City's "overall conduct" disclosed "its acquiescence" in the assignment of C & C's duties and in the substitution of St. Michael for the original obligor.
We find no support in the record for the Law Division judge's conclusion that C & C was discharged from performing its obligations under the settlement agreement. A novation may be broadly defined as the substitution of a new contract or obligation for an old one which is thereby extinguished. 15 Williston On Contracts, § 1865 at 582-85 (3d ed. 1972). Our present discussion is confined to situations in which a new party is introduced. In that respect, a novation "is a substituted *337 contract that includes as a party one who was neither the obligor nor the obligee of the original duty." Restatement (Second) of Contracts, § 280 at 377 (1981). A novation "necessarily involves the immediate discharge of an old debt or duty, or part of it and the creation of a new one." 15 Williston On Contracts, § 1865 at 587. The extinguishment of the original duty is fundamental to a novation, because a subsequent breach gives no right of action against the initial obligor. See Restatement (Second) of Contracts, Comments to § 280 at 378. In contrast, an assignment does not discharge the original debtor, but merely transfers the duty to the assignee as an additional obligor. 15 Williston On Contracts, § 1867A, at 604.
Because of the far reaching effect of a novation, it is necessary that there be a mutual agreement among the parties to the old and new obligations whereby the new agreement is substituted for the prior one. Adams v. Jersey Central Power & Light Co., 21 N.J. 8, 15, 120 A.2d 737 (1956). A party "cannot relieve himself of the obligations of a contract without the consent of the obligee." Riley v. New Rapids Carpet Center, 61 N.J. 218, 224, 294 A.2d 7 (1972). There must be a "clear and definite intention on the part of all concerned" that it is the purpose of the agreement to substitute a new debtor for the old one. Tolland v. Lista, 46 N.J. Super. 272, 277, 134 A.2d 601 (App.Div. 1957). Although a novation need not be express, but may be implied, Emerson N.Y.-N.J., Inc. v. Brookwood T.V., 122 N.J. Super. 288, 294, 300 A.2d 187 (Law Div. 1973), the burden of proof rests on the defendant to show the intention by the obligee to discharge the original debtor. Mayfair Farms, etc. v. Kruvant Enterprises Co., 64 N.J. Super. 465, 475, 166 A.2d 585 (App.Div. 1960), judgment vacated, 35 N.J. 558, 173 A.2d 905 (1961).
Applying these principles, we are satisfied that St. Michael's assumption of C & C's debt and the publicity apparently given to this event did not establish an implied novation. "Where a party merely performs for the benefit of the debtor, *338 and the creditor accepts performance from him, there is not necessarily a substitution of parties...." Tolland v. Lista, 46 N.J. Super. at 277, 134 A.2d 601. Generally, an agreement to novate is not to be implied from the mere assumption of the liability of a debtor by a third person. See City Nat. Bank of Huron, S.D. v. Fuller, 52 F.2d 870, 874-75 (8th Cir.1931); Hargadine-McKittrick Dry Goods Co. v. Goodman, 55 Fla. 361, 368-69, 45 So. 995, 997 (1908); Harrington-Wiard Co. v. Blomstrom Mfg. Co., 166 Mich. 276, 287, 131 N.W. 559, 563 (1911); Schloss Bros. & Co. v. Bennett, 260 N.Y. 243, 248-49, 183 N.E. 376, 378 (1932). The consent of the creditor to the substitution and the intent to discharge the original obligor will not be implied from the new debtor's partial performance of the contract. In sum, the mere payment of the debt by a third person does not constitute a novation in the absence of a clear understanding that the obligation of the original debtor is extinguished.
In a similar vein, the City's conduct in agreeing to the entry of the consent judgment against St. Michael did not establish a novation. The City could legitimately seek enforcement of its rights against both C & C, the assignor, and St. Michael, the assignee. Cf. Broadway Maintenance Corp. v. Rutgers, 90 N.J. 253, 259, 447 A.2d 906 (1982). In that respect, we deem it significant that the City expressly reserved its right to enforce the terms of the stipulation against C & C. Clearly, the judgment does not evidence an intent to extinguish the City's right to pursue C & C in the event of a default by St. Michael.
Succinctly stated, the City's acquiescence in the assignment did not discharge C & C from its obligations under the stipulation of dismissal. Accordingly, the order of the Law Division is reversed and the matter is remanded for entry of a judgment in favor of Union City and against C & C Realty and C & C Associates for $30,000.