**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1638-19

ANTHONY FOTI and
CRISTINA FOTI, his wife,

     Plaintiffs,

v.

JG ELIZABETH II, LLC[1]
D/B/A THE MILLS AT JERSEY
GARDEN MALL I/S/H AS
SIMON PROPERTY GROUP, INC.,
and N.J. METROMALL URBAN
RENEWAL, INC. I/S/H AS
ELIZABETH METROMALL, LLC,

     Defendants-Respondents,

and

WE ARE ONE UNITED, improperly
pled as WE ARE ONE UNITED
and NJ STATE AFL-CIO
COMMUNITY SERVICES
AGENCY, INC., UNION
COUNTY COLLEGE and
COUNTY OF UNION,

---

[1] We added JG Elizabeth II, LLC to the caption as it was omitted from the caption of plaintiffs' complaint filed in the Law Division.

Defendants,

and

CITY OF ELIZABETH,

Defendant-Appellant,

_____

Argued May 3, 2021 – Decided July 2, 2021

Before Judges Messano, Hoffman and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3213-17.

Robert F. Varady argued the cause for appellant (LaCorte, Bundy, Varady & Kinsella, attorneys; Robert F. Varady, of counsel and on the briefs; Christina M. DiPalo, on the briefs).

Andrew L. Stern argued the cause for respondent (Weiner Law Group, attorneys; Donald M. Garson and Ann Marie F. Kane, on the brief).

PER CURIAM

This appeal was calendared back-to-back with A-1971-19, also decided today. There, we affirmed the trial court's orders granting summary judgment to defendants City of Elizabeth (Elizabeth), and JG Elizabeth II, LLC, d/b/a The Mills at Jersey Garden Mall i/s/h as Simon Property Group, Inc., and N.J. Metromall Urban Renewal, Inc., i/s/h as Elizabeth Metromall, LLC

2                                                                    A-1638-19

(collectively, JG), and dismissing the negligence complaint brought by Anthony Foti (plaintiff) and his wife, Christina. After the court entered summary judgement, JG moved for an order compelling Elizabeth to reimburse JG for counsel fees, costs, and expenses incurred in defense of plaintiff's negligence claims. The trial court conducted oral argument and subsequently entered the September 27, 2019 order entitling JG to reimbursement. JG subsequently submitted a certification of fees, costs, and expenses incurred. Elizabeth did not challenge the amount but, again, challenged JG's entitlement to any award. The judge's December 12, 2019 order required Elizabeth to pay $62,041.65 in counsel fees and costs. Elizabeth now appeals both orders.

Elizabeth argues that an oral lease existed between JG and the County of Union (the County) that superseded the written lease between Elizabeth and the Glimcher Group (Glimcher), the developer of the mall and JG's predecessor in interest. In the alternative, Elizabeth argues the provisions of the written lease did not impose a duty to defend JG against plaintiff's lawsuit. We disagree and affirm.

I.

We refer to our opinion in A-1971-19 regarding the substance of plaintiff's complaint, repeat those facts only as necessary, and focus here on the salient

evidence regarding the relationship of the three parties — Elizabeth, JG, and the County — with respect to the leasehold interest in the premises that was the site of plaintiff's accident — Space 1158 at the mall. Elizabeth first executed a lease for the space in 2000 (the Lease) and, pursuant to its terms, Glimcher charged Elizabeth no rent. Section 11.01 of the Lease was entitled "Tenant's Insurance." Subsection (a) provided various insurance coverage Elizabeth was required to procure; Section 11.01(d) included an alternative for Elizabeth to satisfy its obligations "by means of self-insurance." The parties crossed out the underlying text of the entire section and wrote in its place, "Tenant and Landlord hereby acknowledge and agree that all insurance requirements of Landlord under this Lease shall be satisfied by Tenant by means of Tenant's self-insurance." The lease was modified and extended two times for successive five-year terms with the final extension expiring on October 31, 2016. None of the modifications affected Section 11.01 or the handwritten terms that replaced it.

Plaintiff was employed by the County on the date of the accident, August 28, 2015, when he was sent to do electrical work above the ceiling of Space 1158. JB was unaware of his presence.

Within a few months of the expiration of the Lease in October 2016, Elizabeth's Director of Economic Development contacted the County and

advised that the city was still being billed for electrical services for Space 1158; he believed the County should be responsible for the service since Elizabeth was no longer using the space. Although negotiations began when the Lease expired, the County and JB did not execute a lease for Space 1158 until August 8, 2017, nearly two years after plaintiff's accident, with a retroactive effective date of November 1, 2016, nearly a year after plaintiff's accident.

Although the appellate record contains no documentation, it is undisputed that when plaintiffs' filed suit naming Elizabeth and JB as defendants, JB tendered its defense to Elizabeth. Elizabeth declined without any reservation of rights, denying it was obligated to provide a defense or indemnification.

II.

Elizabeth argues an oral lease existed between JB and the County prior to plaintiff's accident. JB argues that Elizabeth has not produced any documents showing a transfer relieving Elizabeth of its lease obligations. We agree with JB.

The only support Elizabeth cites is a February 2015 letter from the County's Deputy Manager to the Mall's general manager, Denise Palazzo, expressing an interest in "[w]orking with the City of Elizabeth" and others to remodel the space and extending "our lease" for an additional five years. When shown the letter at her deposition, Palazzo did not recall ever responding to it, nor did she recall

5

acknowledging at the time that the letter was from a county employee, as opposed to Elizabeth's employee.

The cases Elizabeth cites in support of the proposition there was an oral lease that supplanted the existing written lease are inapposite. In Deutsch v. Budget Rent-A-Car, we concluded that despite the landlord's purported termination of a written month-to-month lease, the tenant's expenditure of significant funds to improve the leasehold with the landlord's knowledge established the existence of a six-year oral lease. 213 N.J. Super. 385, 387–90 (App. Div. 1986). Here, JB never acknowledged the County as lessee of the space at the time of plaintiff's accident, was unaware it was making improvements, and the existing written lease with Elizabeth was still in effect.

Also, in Cauco v. Galante, the Court only concluded that the plaintiff had established a prima facie case that an oral promise made by the defendant to place a mortgage on his property as security for a loan the plaintiff made was enforceable. 6 N.J. 128, 130–36 (1951). Despite its oral nature, the agreement did not violate the Statute of Frauds because the plaintiff had performed her end of the agreement and demonstrated a prima facie case of fraud. Id. at 137–38. We need not comment how different these facts are from those Elizabeth has mustered here.

A-1638-19

JG rightly notes that what Elizabeth really asserts is a novation that extinguished Elizabeth's prior obligations under the Lease. "A novation may be broadly defined as the substitution of a new contract or obligation for an old one which is thereby extinguished." Fusco v. City of Union City, 261 N.J. Super. 332, 336 (App. Div. 1993) (citing 15 Williston On Contracts, § 1865 at 582–85 (3d ed. 1972)). "Unlike a modification which leaves the original contract in place, a novation substitutes a new contract and extinguishes the old one." Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Taxation, 414 N.J. Super. 453, 466 (App. Div. 2010) (citing Fusco, 261 N.J. Super. at 336).

"Because of the far[-]reaching effect of a novation, it is necessary that there be a mutual agreement among the parties to the old and new obligations whereby the new agreement is substituted for the prior one." Fusco, 261 N.J. Super. at 337 (citing Adams v. Jersey Cent. Power & Light Co., 21 N.J. 8, 15 (1956)). "To constitute a novation, a new cont[r]act must exhibit a clear and definite intention on the part of all parties that its purpose is to supersede and eliminate a prior cont[r]act. A novation is never presumed." Rodriguez v. Raymours Furniture Co., 436 N.J. Super. 305, 329 (App. Div. 2014), rev'd on other grds., 225 N.J. 343 (2016) (citing Sixteenth Ward Bldg. & Loan Ass'n of Newark v. Reliable Loan, Mortg. & Sec. Co., 125 N.J. Eq. 340, 342–43 (1939)).

7

"The burden of proving a novation lies with the party alleging it." Id. at 329 (citing Sixteenth Ward Bldg. & Loan Ass'n, 125 N.J. Eq. at 345). Simply put, Elizabeth failed to prove a novation that relieved it of its obligations under the Lease to provide insurance to JB through its self-insurance program.

III.

Elizabeth alternatively argues the Lease did not impose a duty to defend. As noted, in Section 11.01, entitled Tenant's Insurance, the parties crossed out the underlying text and wrote, "Tenant and Landlord hereby acknowledge and agree that all insurance requirements of Landlord under this Lease shall be satisfied by Tenant by means of Tenant's self-insurance."

"It is well-settled that '[c]ourts enforce contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract."'" Serico v. Rothberg, 234 N.J. 168, 178 (2018) (alteration in original) (quoting In re Cnty. of Atlantic, 230 N.J. 237, 254 (2017)). We apply basic principles of contract interpretation to a lease. Town of Kearny v. Disc. City of Old Bridge, Inc., 205 N.J. 386, 411 (2011); N.J. Indus. Props., Inc. v. Y.C. & V.L., Inc., 100 N.J. 432, 456 (1985).

> A reviewing court must consider contractual language
> in the context of the circumstances at the time of
> drafting and . . . apply a rational meaning in keeping
> with the expressed general purpose. [I]f the contract

A-1638-19

into which the parties have entered is clear, then it must be enforced as written. Where an agreement is ambiguous, courts will consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation.

[Serico, 234 N.J. at 178 (quoting In re Cnty. of Atlantic, 230 N.J. at 254–55 (alteration[] in original) (citations and quotation marks omitted)).]

"Whether a contract term is clear or ambiguous amounts to a question of law." Sullivan v. Max Spann Real Est. & Auction Co., 465 N.J. Super. 243, 265 (App. Div. 2020) (citing Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)). "A contract is ambiguous if it is reasonably susceptible to two interpretations." Ibid. (citing Potomac Ins. Co. of Ill. ex rel. OneBeacon Ins. Co. v. Pa. Mfrs. Ass'n Ins. Co., 425 N.J. Super. 305, 324 (App. Div. 2012)).

There is nothing ambiguous about the meaning of self-insurance as used in the Lease. Self-insurance is "[a] plan under which a business maintains its own special fund to cover any loss. Unlike other forms of insurance, there is no contract with an insurance company." Black's Law Dictionary 958 (11th ed. 2019). Rather than retaining a specific insurance policy, the parties agreed that Elizabeth had its own special fund to provide insurance coverage.

Elizabeth argues that the Lease did not require it provide a defense to JB because the Lease specifically did not require Elizabeth to indemnify JB for its

own negligence. Since plaintiff's complaint alleged both Elizabeth and JB were negligent, Elizabeth had no obligation to defend JB.

However, "the duty to defend is independent of or broader than the duty to pay." Scarfi v. Aetna Cas. & Sur. Co., 233 N.J. Super. 509, 515 (App. Div. 1989) (citing Danek v. Hommer, 28 N.J. Super. 68, 79 (App. Div. 1953), aff'd o.b. 15 N.J. 573 (1954)). "In other words, 'potentially coverable' claims require a defense." Abouzaid v. Mansard Gardens Assocs., LLC, 207 N.J. 67, 80 (2011) (citing Stafford v. T.H.E. Ins. Co., 309 N.J. Super. 97, 103 (App. Div. 1998)).

Yet, "[n]either the duty to defend nor the duty to indemnify 'exists except with respect to occurrences for which the policy provides coverage.'" Wear v. Selective Ins. Co., 455 N.J. Super. 440, 455 (App. Div. 2018) (quoting Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22 (1984)). Even though the Lease did not require Elizabeth to indemnify JB for its own negligence, it was obligated to provide a defense if, despite the crossed-out Section 11.01, the parties intended JB to have, as handwritten in the Lease, the benefit of "all insurance requirements . . . under this Lease."

One of the requirements of Section 11.01(a) was that Elizabeth procure a "comprehensive general liability policy" that provided broad coverage for any claim "for injury to persons . . . occurring in or about" Space 1158. And, JB, as

10

landlord, was to be an additional insured. Section 11.01(d), which specifically dealt with self-insurance in lieu of a policy of insurance, obligated Elizabeth to provide the same coverage. The issue, therefore, is what to make of the fact that Section 11.01 was crossed out, yet the parties wrote that Elizabeth was required to provide self-insurance that included "all insurance requirements . . . under this Lease."

We do not think the Lease was ambiguous because it is not "susceptible to at least two reasonable alternative interpretations." Nester, 301 N.J. Super at 210 (quoting Kaufman v. Provident Life & Cas. Ins. Co., 828 F.Supp. 275 (D.N.J. 1992)). Indeed, Elizabeth has never offered an alternative interpretation to JB's claim that it was an additional insured through Elizabeth's self-insurance program.

"In general, the polestar of construction is the intention of the parties as disclosed by the language used, taken in its entirety, and evidence of the attendant circumstances may be considered, not to change the agreement made but to secure light by which to measure its actual significance." Renee Cleaners, Inc. v. Good Deal Super Mkts of N.J., Inc., 89 N.J. Super. 186, 190 (App. Div. 1965). "Terms will be implied in a contract where the parties must have intended them because they are necessary to give business efficacy to the

11

contract as written." N.J. Bank v. Palladino, 77 N.J. 33, 46 (1978) (citing Renee Cleaners, 89 N.J. Super. at 190); see also Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 270 (2006) ("[T]he words of the contract alone will not always control").

In this case, JB's predecessor leased Space 1158 for no consideration to support Elizabeth's efforts to benefit its citizens. It did not require Elizabeth to purchase a policy of insurance providing coverage to the landlord for personal injury claims brought by those injured in the space, relying instead on Elizabeth's self-insurance program to provide coverage to the landlord as an additional insured. There is simply no other reasonable interpretation of these provisions of the Lease.

Elizabeth seems to take issue with JB's failure to file a separate declaratory judgment action to compel assumption of its defense. While that may be a preferable course, the failure to do so does not bar JB's claim. Elizabeth denied a request for defense without reservation, presumably believing that since it was not required to indemnify JB for its negligence, it did not need to provide a defense. However, "[b]y permitting the dispute of uncovered claims, courts protect both parties by ensuring that the insurer does not incur responsibility for uncovered claims, and that the insured is entitled to

A-1638-19

both defense and indemnity if the dispute is resolved in its favor." Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 617 (2011) (citing N.J. Mfrs. Ins. Co. v. Vizcaino, 392 N.J. Super. 366, 370 (App. Div. 2007)). An "insurer's obligation to defend becomes an obligation to reimburse for defense costs to the extent that the defense is later determined to have been attributable to the covered claims and, if coverage is not determinable in the underlying action, it is later determined that there was in fact coverage." Wear, 455 N.J. at 455 (quoting Muralo Co. v. Emps. Ins. of Wausau, 334 N.J. Super. 282, 290 (App. Div. 2000)).

Here, the only reasonable interpretation of the Lease was that the parties intended Elizabeth would, through its self-insurance program, provide a defense to the landlord, JB, against plaintiff's claim for injuries that occurred in Space 1158 unless they were caused by the landlord's own negligence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1638-19