**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3085-23

ALEXANDER WALKER, on
behalf of himself and those similarly
situated,

     Plaintiff-Respondent,

v.

ROUTE 18 AUTO GROUP, LLC, d/b/a
ROUTE 18 CHRYSLER JEEP DODGE
RAM, LLC, WILLIAM MCDONAGH
and MICHAEL SALERNO,

     Defendants-Appellants.

_____

Argued on January 7, 2025 – Decided February 12, 2025

Before Judges Firko, Bishop-Thompson and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6318-23.

Michael V. Gilberti argued the cause for the appellants (Jardim Meisner Salmon Sprague & Susser, PC, attorneys; Michael V. Gilberti, on the briefs).

Henry P. Wolfe argued the cause for the respondent (The Dann Law Firm, PC, attorneys; Henry P. Wolfe, Javier L. Merino and Andrew R. Wolf, on the brief).

PER CURIAM

This appeal as of right[1] concerns the enforceability of conflicting arbitration provisions in documents signed by a consumer when purchasing a car and raises the question of whether the assignment of one of those contracts eliminates any conflict. Defendants Route 18 Auto Group d/b/a Route 18 Chrysler Jeep Dodge Ram, LLC, William McDonagh and Michael Salerno appeal from a May 20, 2024, Law Division order denying their motion to dismiss plaintiff Alexander Walker's complaint and compel arbitration. We affirm.

I.

This matter comes to us on appeal pursuant to Rule 2:2-3(b)(8), which permits an appeal as of right from an order "compelling or denying arbitration, whether the action is dismissed or stayed[.]" R. 2:2-3(b)(8); see also GMAC v. Pittella, 205 N.J. 572, 583 (2011). "Rule 2:2-3(a) governs the right to appeal to the Appellate Division from final judgments and also delineates various

---

[1] "[O]rders compelling or denying arbitration, whether the action is dismissed or stayed," are appealable as of right. R. 2:2-3(b)(8).

orders that, although interlocutory, are deemed final for purposes of taking an appeal as of right." GMAC, 205 N.J. at 583.

The facts are straightforward and undisputed. On September 13, 2023, plaintiff purchased a used 2020 Jeep Grand Cherokee from defendants for a total cost of $40,356.44, which included the following: a selling price of $36,770.26; document fees: $798; CT tax (6.35%): $2,385.59; and registration/title: $402.59. Plaintiff received a trade-in allowance of $18,000 and the dealership paid off his existing loan of $23,451.20. Plaintiff financed the balance of $45,807.65, payable in monthly payments of $776.28 through the loan agreement, the Retail Installment Sale Contract (RISC).

As part of the sale, plaintiff signed two documents relevant to this appeal: (1) the Separate Arbitration Agreement (SAD); and (2) the RISC. Defendants signed the RISC, and then assigned their interest in the RISC to Valley National Bank "without recourse."

Approximately two months later, on November 8, 2023, plaintiff filed a complaint against defendants, alleging violations of the Consumer Fraud Act (CFA) on behalf of himself and a proposed class of consumers, which included allegations of overcharging him and other consumers for official title, registration and unspecified documentary service fees, failing to honor

3

advertised vehicle pricing, and failing to transfer title in a timely manner to the purchaser.

On December 3, 2023, defendants filed a motion to dismiss the complaint and compel arbitration, seeking to enforce the arbitration provision of the SAD only. Plaintiff opposed the motion, arguing that the two arbitration provisions in the SAD and RISC were invalid for lack of mutual assent.

Following oral argument on March 1, 2024, the judge issued an order and accompanying statement of reasons on May 20, 2024, denying defendants' motion. The judge found the facts of the present case substantially similar to those in NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404 (App. Div. 2011) and concluded that the two arbitration provisions were "too plagued with confusing terms and inconsistencies to put a reasonable consumer on fair notice of their intended meaning." The judge found defendants' argument that no conflict existed because the RISC had been assigned and they were no longer a party to it, unavailing. A memorializing order was entered. This appeal followed.

II.

On appeal, defendants' main argument, albeit with subparts, is that the judge erred in finding the facts of NAACP "overwhelming[ly] similar" to this

case and ignoring: (1) the assignment of the RISC; (2) the Federal Arbitration Act (FAA); and (3) caselaw requiring arbitration.

A trial court's determination regarding the enforceability of an arbitration agreement is a question of law. Therefore, we review such determinations de novo. Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019); Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019). Likewise, we review a "Rule 4:6-2(e) motion[] to dismiss for failure to state a claim upon which relief can be granted . . . de novo." Arias v. Cnty. of Bergen, 479 N.J. Super. 268, 274-75 (App. Div. 2024) (quoting Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021)).

A.

We begin our analysis with fundamental legal principles governing contract law and arbitration. Both the FAA, 9 U.S.C. §§ 1 to 16, and the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -36, "enunciate federal and state policies favoring arbitration." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 440 (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). In New Jersey, "the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes." Martindale v. Sandvik,Inc., 173 N.J. 76, 92 (2002).

However, recognizing "[a]rbitration's favored status does not mean that every arbitration clause, however phrased, will be enforceable." Atalese, 219 N.J. at 441 (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 187 (2013) "[T]he preference for arbitration 'is not without limits.'" Ibid. (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001))). An agreement to arbitrate, as with any contract provision, "must be the product of mutual assent, as determined under customary principles of contract law." NAACP, 421 N.J. Super. at 424 (citing N.J.S.A. 2A:23B-6).

For there to be a "meeting of the minds" on the essential terms, there must be "clarity and internal consistency of a contract's arbitration provisions . . . ." Id. at 425. "[B]ecause arbitration provisions are often embedded in contracts of adhesion, courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." Ibid. (citing Fawzy v. Fawzy, 199 N.J. 456, 469-70 (2009)).

B.

Defendants contend the factual and legal distinctions between this case and NAACP are significant, including the issue of assignment, and therefore, the judge erred in concluding the similarities were "overwhelming."

6

Defendants, however, fail to specify the distinctions they assert, which distinguish this case from NAACP, thereby making it inapposite.

We recognize one distinction, which is the arbitration provisions in NAACP are spread over three documents, while the arbitration provisions here are contained in two documents: the SAD and RISC. Nonetheless, consistent with the facts in NAACP, the arbitration provisions in the SAD and RISC at issue in this case are also "plagued with confusing terms and inconsistencies."

There are several distinct differences between the arbitration provisions in the SAD and the RISC. As we found in NAACP, the documents differ as to the "nature and locale of the arbitration forum itself." 421 N.J. Super. at 431. The SAD provides:

> You may choose one of the following arbitration organizations and its applicable rules, the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.adrforum.com), the American Arbitration Association, 335 Madison Avenue, Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you may choose subject to our approval.

While the RISC provides:

> You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we

A-3085-23

agree, you or we may choose a different arbitration organization.

The arbitration provisions also differ as to the amount of fees to be paid and by whom for the filing, administration, service or case management fees as well as the arbitrator or hearing fee.  For example, the SAD provides:

> We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $1[,]500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law.

With respect to these fees, the RISC provides:

> We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law.

A-3085-23

These documents also differ regarding the right to appeal the arbitrator's award. For instance, the portion of the SAD pertaining to the right to appeal provides:

> The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs.

Whereas the RISC provides that "[a]ny award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the [FAA]."

As we held in NAACP, if a matter involves "conflicting arbitration provisions set forth in multiple contract documents," the court is required to compare those provisions. 421 N.J. Super. at 428 (citing Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577, 581 (App. Div. 2004)) (severing the arbitration provisions from the parties' agreement as a whole because of three conflicting arbitration clauses in three separate documents). Those provisions will be

unenforceable if they do not comply with the "basic tenets of contract formation and interpretation." Id. at 429 (citing Rockel, 368 N.J. Super. at 582-83).

These may include: (1) "uncertain content of the parties' agreement to arbitrate"; (2) "the contracts' conflicting descriptions of the manner and procedure which would govern the arbitration proceedings"; (3) "the absence of a definitive waiver of plaintiffs' statutory claims"; and (4) "the obscure appearance and location of the arbitration provisions" in the agreements. Rockel, 368 N.J. Super. at 580. The flaws must be viewed in their totality to determine if they "militate against the entry of an order requiring arbitration . . . ." Ibid.

Here, the factual differences are dispersed in these two documents and vary substantially. While a prudent buyer may understand that any disputes will be resolved in arbitration, the differences between the SAD and RISC do not convey the conditions or process of arbitration clearly to the buyer. See id. at 583. Based upon our de novo review, we are satisfied that the motion judge did not err in finding that the facts and legal conclusions in the present matter were consistent with those in NAACP, and therefore, the arbitration provisions were invalid.

C.

Defendants next contend that by assigning their rights "without recourse" to Valley National Bank immediately upon the execution of the RISC, the assignment "without recourse" terminated defendants' right to arbitrate under the RISC. In other words, defendants argue that the assignment extinguished their right to performance under the RISC. This argument is unavailing for the following reasons.

First, because "[a]n agreement to arbitrate, like any other contract, 'must be the product of mutual assent,'" and "[m]utual assent requires . . . the parties have an understanding of the terms to which they have agreed" and "intent to surrender th[eir] [legal] rights," Atalese, 219 N.J. at 442 (first quoting NAACP, 421 N.J. Super. at 424; then quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)), "[t]he key . . . is clarity." Barr v. Bishop Rosen & Co., Inc., 442 N.J. Super. 599, 607 (App. Div. 2015). "[T]he parties must know at the time of formation that 'there is a distinction between resolving a dispute in arbitration and in a judicial forum.'" Ibid. (quoting Atalese, 219 N.J. at 445). It is insufficient that a consumer has a "generalized sense" of how a "post-sale dispute" will be handled. NAACP, 421 N.J. Super. at 431. Rather, a consumer is entitled to

have a clear, precise understanding of the "exact terms and conditions of [the] arbitration process" when they execute the agreement. Ibid.

Second, an individual, not initially a party to a contract, may have rights in a contract validly assigned to him. See Berkowitz v. Haigood, 256 N.J. Super. 342, 346 (Law Div. 1992). "A valid assignment must contain clear evidence of the intent to transfer the person's rights and 'the subject matter of the assignment must be described sufficiently to make it capable of being readily identified.'" Ibid. (quoting 3 Williston on Contracts § 404:4 (Jaeger ed., 3d ed. 1957)). "[A]n assignment of a contract right extinguishes the right in the assignor and recreates the same right in the assignee"; however, "it is impossible to assign a duty. . . ." Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy, 416 N.J. Super. 418, 426 (App. Div. 2010) (emphasis omitted) (quoting 9 John E. Murray, Jr. et al., Corbin on Contracts § 47.1 (rev. ed. 2007) "[A]n assignment does not discharge the original debtor, but merely transfers the duty to the assignee as an additional obligor." Fusco v. City of Union City, 261 N.J. Super. 332, 337 (App. Div. 1993) (citing 15 Williston on Contracts § 1867A (3d ed. 1972))).

Defendants' argument conflates an assignment with a novation. New Jersey law is clear that a novation and assignment are distinguishable, and only

the former prevents a subsequent breach from giving a right of action to a plaintiff against the initial obligor. See Fusco, 261 N.J. Super. at 337.

In contrast, a novation "involves the immediate discharge of an old debt or duty, or part of it and the creation of a new one." Ibid. (quoting 15 Williston on Contracts § 1865). "The extinguishment of the original duty is fundamental to a novation, because a subsequent breach gives no right of action against the initial obligor." Ibid. (citing Restatement (Second) of Conts. § 280 cmt. b (Am. L. Inst. 1981)). Due to the impact of such an extinguishment of the original duty, there must be mutual agreement among the parties that the old argument is being substituted for the new one. Adams v. Jersey Cent. Power & Light Co., 21 N.J. 8, 15 (1956). A party "cannot relieve himself of the obligations of a contract without the consent of the obligee." Riley v. New Rapids Carpet Ctr., 61 N.J. 218, 224 (1972) (citing 3 Williston on Contracts, § 411). "There must be a 'clear and definite intention on the part of all concerned' that it is the purpose of the agreement to substitute a new debtor for the old one." Fusco, 261 N.J. Super. at 337 (quoting Tolland v. Lista, 46 N.J. Super. 272, 277 (App. Div. 1957)).

A-3085-23

There was clearly no novation in the present matter. Rather, the assignment of right from defendant Route 18 to Valley National Bank[2] is "a straightforward transfer of the right to receive payment." Selective Ins. Co. of Am., 416 N.J. Super. at 426. Valley National was not made a party to the contract nor were any duties delegated to it. "Once properly notified of the assignment, the obligor has the duty to pay the assignee, rather than the assignor." Tirgan v. Mega Life & Health Ins., 304 N.J. Super. 385, 390 (Law Div. 1997).

Defendants further argue that the assignment designation, "without recourse," confirms defendants "lost [their] right to proceed against plaintiff under the [arbitration provision in the] RISC." Defendants, relying on Hyman v. Sun Ins. Co., 70 N.J. Super. 96, 101 (App. Div. 1961), contend this designation extinguishes their rights under the contract and means that plaintiff cannot hold defendants liable. Plaintiff asserts defendants misconceive the term "without recourse" because this designation does not extinguish any rights, and a novation would be required to do so.

Defendants' reliance is misplaced. As we explained in Hyman, "an assignment of a mortgage payment without recourse . . . meant that [the

---

[2] Valley National Bank is not a party to this litigation.

assignee] could not hold the assignor personally liable on the contract of assignment." 70 N.J. Super. at 101. For instance, should the plaintiff fail to remit the monthly loan payments, Valley National Bank, the assignee of the loan, could not hold defendants personally liable on the underlying contract.

As the judge properly found, "[t]he assignment is irrelevant" primarily because "[n]owhere in the RISC does it state that the buyer, plaintiff herein, loses any rights it has against the assignor, nor was there any release." The judge further held that "[t]he 'assigned without recourse' language does not explicitly state, nor can it be interpreted [to mean] that buyer/plaintiff loses all claims he has against the assignor through the assignment." We discern no error in the judge's conclusion of law.

### D.

Defendants urge us to follow the reasoning and legal authorities cited in an unpublished case. However, "[n]o unpublished opinion shall constitute precedent or be binding upon any court." R. 1:36-3. Therefore, we decline to address defendants' arguments that are based upon an unpublished opinion. See Sciarrotta v. Global Spectrum, 194 N.J. 345, 353 n.5 (2008).

Based upon our de novo review of the matter, we are satisfied the judge correctly applied the law to the undisputed facts and properly denied defendants' motion to dismiss plaintiff's complaint and compel arbitration.

To the extent we have not addressed any of defendants' remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed and remanded for further proceedings.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3085-23